HASSELL HYLER v. GTE PRODUCTS CO. AND AMERICAN MOTORISTS INSURANCE CO.

No. 96PA92

(Filed 12 February 1993)

1. **Master and Servant § 69 (NCI3d)— workers' compensation— components of award**

    There are two distinct components of an award under the Workers' Compensation Act: (1) payment for the cost of medical care, now denominated "medical compensation," which consists of the employee's medical expenses incurred as a result of a job-related injury; and (2) general "compensation" for financial loss other than medical expenses, which includes payment to compensate for an employee's lost earning capacity and payment of funeral expenses.

    **Am Jur 2d, Workers' Compensation §§ 379, 435.**

2. **Master and Servant § 75 (NCI3d)— workers' compensation— future medical expenses—change of condition not required**

    While N.C.G.S. § 97-47 requires a claimant to show a "change of condition" before the Industrial Commission may amend an order awarding general "compensation," N.C.G.S. § 97-25 permits the Industrial Commission to order the employer to pay new or additional medical expenses even if there has been no material change in the employee's condition or in available medical treatment. The opinion of the Court of Appeals holding to the contrary in *Shuler v. Talon Div. of Textron*, 30 N.C. App. 570, is overruled. Therefore, the Industrial Commission could order the employer to pay plaintiff's future medical expenses incurred as a result of his knee injury even though the Commission had previously approved the parties' final agreement for compensation where the plaintiff underwent a knee replacement and the parties agree that there is a substantial risk that plaintiff's prosthetic knee will fail and will have to be replaced and that plaintiff's condition must be monitored regularly by a physician for this reason.

    **Am Jur 2d, Workers' Compensation § 435.**

    Justice MEYER dissenting.

    Justices WEBB and PARKER did not participate in the consideration or decision of this case.

## HYLER v. GTE PRODUCTS CO.

[333 N.C. 258 (1993)]

On discretionary review of an unpublished decision of the Court of Appeals, 105 N.C. App. 443, 413 S.E.2d 801 (1991), reversing a decision of the Industrial Commission, entered 31 August 1990, which denied the plaintiff's request under N.C.G.S. § 97-25 for continuing medical expenses. Heard in the Supreme Court on 2 November 1992.

*Patterson, Harkavy, Lawrence, Van Noppen & Okun, by Henry N. Patterson, Jr., Jonathan R. Harkavy, and Martha A. Geer, for the plaintiff-appellee.*

*Tuggle, Duggins & Meschan, P.A., by Joseph Brotherton and J. Reed Johnston, Jr., for the defendant-appellants.*

*Kathleen Shannon Glancy, for the North Carolina Academy of Trial Lawyers, amicus curiae.*

MITCHELL, Justice.

Certain facts are uncontroverted in this worker's compensation action. The plaintiff, Hassell Hyler, suffered a compensable injury to his left knee on 2 January 1980, while employed by the defendant, GTE Products. The plaintiff underwent six knee surgeries between January of 1980 and June of 1983; in the June 1983 surgery, the plaintiff's knee joint was replaced. By 24 May 1984, the plaintiff's knee had reached its maximum medical improvement, but he was left with permanent partial disability of his left leg.

The parties agree that there is a substantial risk that the plaintiff's prosthetic knee will fail and that the knee replacement surgery will have to be performed again. Because of this risk, the plaintiff must be seen at least annually by his orthopedist in order to monitor the condition of his knee. The condition of the plaintiff's knee has not materially deteriorated since June 1984.

On 14 February 1985, the Industrial Commission approved the parties' final agreement entered on Commission Form 26 in which the defendants agreed to pay compensation to the plaintiff for the permanent partial disability of his left leg. This form agreement contained no provision concerning the plaintiff's medical expenses related to his compensable injury. The plaintiff was last paid compensation by the defendants on 25 February 1985. On 19 February 1986, the plaintiff sought to reopen his claim before the Industrial Commission, asking for additional compensation for his disability based on the grounds of a change of condition as provided in N.C.G.S.

HYLER v. GTE PRODUCTS CO.

[333 N.C. 258 (1993)]

§ 97-47. On 10 March 1987, the plaintiff further requested that the Commission order GTE Products and its insurance carrier, American Motorists Insurance Co., to pay the plaintiff's continuing medical expenses as mandated by N.C.G.S. § 97-25. A deputy commissioner entered an award on 16 August 1989 requiring the defendants to pay the plaintiff's continuing medical expenses incurred as a result of his knee injury. On 31 August 1990, the Industrial Commission entered an order reversing the deputy commissioner's award on the ground that N.C.G.S. § 97-47 required the plaintiff to demonstrate, as a condition for payment of future medical expenses under N.C.G.S. § 97-25, either that his condition had changed for the worse or that evidence bearing on the need for future medical care had developed or had become available following the Commission's approval of the parties' last agreement for compensation.

The plaintiff appealed to the Court of Appeals, which reversed the Commission's order after concluding, in an unpublished opinion, that the defendants must pay for the plaintiff's "future medical expenses which his artificial knee will assuredly require." The defendants' petition for discretionary review of the decision of the Court of Appeals was allowed by this Court on 24 June 1992.

Because we conclude that the "change of condition" requirement of N.C.G.S. § 97-47 does not apply to the plaintiff's request for medical expenses under N.C.G.S. § 97-25, we also conclude that the defendants were required to provide for those expenses. Therefore, we affirm the holding of the Court of Appeals.

Relevant portions of the version of N.C.G.S. § 97-25 applicable at the time the present case arose[1] provide as follows:

Medical, surgical, hospital, nursing services, medicines, sick travel, rehabilitation services, and other treatment including medical and surgical supplies as may reasonably be required to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability, and in addition thereto such original artificial members as may be reasonably necessary at the end of the healing period shall be provided by the employer. In

---

1. Effective 15 June 1991, the General Assembly made certain technical amendments to N.C.G.S. § 97-25. 1991 N.C. Sess. Laws ch. 703, § 3. Those amendments are discussed at other points in this opinion.

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.

The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

In *Little v. Penn Ventilator Co.*, 317 N.C. 206, 211, 345 S.E.2d 204, 208 (1986), we stated that the legislature intended N.C.G.S. § 97-25 to require that employers provide medical treatments which either will lessen an employee's period of disability, will effect a cure, or will give relief. We also determined that where, as in the present case, an injured employee's condition appeared stable but required monitoring to detect and prevent possible deterioration, medical expenses incurred in monitoring the employee's condition would give "relief" of the type that would require his employer to pay those expenses. *Id.* at 213-214, 345 S.E.2d at 209-10.

The dissent argues that this Court in *Little* announced a "change in law." To the contrary, this Court in *Little* merely interpreted the version of N.C.G.S. § 97-25 which has been in effect since 1973. Until 1973, treatment to "effect a cure or give relief" was limited to a period of ten weeks following the injury; any treatment provided beyond the ten-week period was required to "lessen the period of disability." 1931 N.C. Sess. Laws ch. 274, § 4. In 1973, the legislature broadened an employee's right to recover under this statute by removing the time limitation on an employee's right to treatments which would "effect a cure or give relief." 1973 N.C. Sess. Laws ch. 520, § 1. In *Little*, this Court simply explained for the first time the obvious effect of the 1973 amendment. The legislature's 1991 amendment of N.C.G.S. § 97-25, which merely moved the "effect a cure or give relief" portion of the statute to the definition of "medical compensation" in the new subsection (19) of N.C.G.S. § 97-2, indicates that, when this Court rendered the *Little* opinion in 1986, we correctly interpreted the legislature's

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

intent as expressed in the 1973 amendment of the statute. 1991 N.C. Sess. Laws ch. 703, §§ 1,3.

In the present case, the defendants concede that there is a substantial risk that the plaintiff's prosthetic knee will fail and will have to be replaced and that the plaintiff's condition must be monitored regularly by a physician for this reason. All parties agree that the plaintiff's condition has not materially changed since the Industrial Commission approved the parties' last Form 26 agreement on 14 February 1985 and, thereby, entered its award. The defendants argue that, despite the fact that he otherwise might be entitled under N.C.G.S. § 97-25 to future medical expenses, the plaintiff is not entitled to have the defendants pay such expenses in this instance because N.C.G.S. § 97-47 requires him first to show that his condition has changed materially since the entry of the Industrial Commission's award. We do not agree.

In determining the meaning of statutes, we follow the traditional rules of statutory construction.

> Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks to accomplish. The statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently.

*Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 82, 347 S.E.2d 824, 828 (1986) (citations omitted), *quoted in Evans v. AT&T Technologies*, 332 N.C. 78, 86, 418 S.E.2d 503, 508-09 (1992). "Statutory interpretation properly begins with an examination of the plain words of the statute." *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992) (citing *Electric Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) ). If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms. *Id.* (citing *Lemons v. Boy Scouts of America, Inc.*, 322 N.C. 271, 276, 367 S.E.2d 655, 688, *reh'g denied*, 322 N.C. 610, 370 S.E.2d 247 (1988) ).

Nothing in the language of N.C.G.S. § 97-25 implies that the "change of condition" requirement of N.C.G.S. § 97-47 applies to any request by an employee for the payment of his medical expenses by his employer. To the contrary, since 1931, N.C.G.S. § 97-25

has mandated that an injured employee's medical care "*shall* be provided by the employer" and that, "*[i]n case of a controversy* arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, *the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.*" (Emphasis added.) Additionally, the statute provides that "[t]he Commission may *at any time* upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission." N.C.G.S. § 97-25 (1985) (amended 1991) (emphasis added). Accordingly, this Court long ago concluded that "in case of a controversy arising relative to the continuance of any treatment the Industrial Commission may order such further treatment as may in its discretion be necessary, and . . . the Commission may change the treatment or designate other treatment suggested by the injured employee." *Hedgepeth v. Casualty Co.*, 209 N.C. 45, 47, 182 S.E. 704, 705 (1936). The complete absence of an express or implied reference in N.C.G.S. § 97-25 to any "change of condition" requirement, in addition to that statute's clear language permitting the Commission to review the medical treatment an employee is receiving and order further treatment *at any time* if an employee requests such a review, compel us to conclude that the legislature did not intend for an injured employee to make any showing of a change in condition before his employer would be required to pay for further medical services or treatment needed as a result of his compensable injury.

[1] We also conclude that the foregoing interpretation of N.C.G.S. § 97-25 is consistent with the terms of N.C.G.S. § 97-47. The legislature provided in N.C.G.S. § 97-47 that:

> Upon . . . the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article . . . . No such review shall affect such award as regards any moneys paid but no such review shall be made after two years from the date of the last payment of compensation pursuant to an award under this Article, except that in cases in which only medical or other treatment bills are paid, no such review shall be made after 12 months

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

from the date of the last payment of bills for medical or other treatment, paid pursuant to this Article.

This statute applies only to reviews of previously entered awards and provides that "on such review [the Commission] may make an award ending, diminishing, or increasing the *compensation* previously awarded." *Id.* (emphasis added). "Compensation" is defined in the Workers' Compensation Act as "the money allowance payable to an employee or to his dependents as provided for in this Article, and includ[ing] funeral benefits provided herein." N.C.G.S. § 97-2(11) (1991). "Compensation" in the context of the Workers' Compensation Act refers to "money relief afforded according to a scale established and for the person designated in the Act." *Ivey v. Prison Department,* 252 N.C. 615, 619-20, 114 S.E.2d 812, 815 (1960) (quoting *Branham v. Panel Co.,* 223 N.C. 233, 236, 25 S.E.2d 865, 867 (1943)). The amount of such "compensation" to be awarded to a claimant is based on the claimant's lost earning capacity. *Ashley v. Rent-A-Car Co.,* 271 N.C. 76, 83, 155 S.E.2d 755, 761 (1967) (quoting *Hill v. DuBose,* 234 N.C. 446, 447-48, 67 S.E.2d 371, 372 (1951)). Medical and hospital expenses which employers must provide pursuant to N.C.G.S. § 97-25 are not a part of "compensation" as it always has been defined in the Workers' Compensation Act. *Id.* at 82, 155 S.E.2d at 760. We previously have determined that the General Assembly intended medical and other payments rendered under N.C.G.S. § 97-25 to "be in addition to the compensation to which [the employee] is entitled under the Act." *Morris v. Chevrolet Co.,* 217 N.C. 428, 432, 8 S.E.2d 484, 486 (1940). We would have difficulty stating matters more clearly than we did when we said that:

> In many jurisdictions the payment of medical expenses is held to be tantamount to the payment of compensation. However, under the definition of the word "compensation" contained in . . . [N.C.G.S. § 97-2(11)], payment of medical or hospital expenses constitutes no part of compensation under the provisions of our Workmen's Compensation Act. *Morris v. Chevrolet Co.,* 217 N.C. 428, 8 S.E. (2d), 484. Compensation is defined in our statute as the money allowance payable to an employee or his dependents, including funeral benefits.

*Whitted v. Palmer-Bee Co.,* 228 N.C. 447, 453, 46 S.E. 109, 113 (1948); *but cf. Biddix v. Rex Mills,* 237 N.C. 660, 666, 75 S.E.2d 777, 782 (1953) (quoting with approval an opinion of an Industrial

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

Commissioner which erroneously implied that the payment of medical bills was compensation).

The legislature's 1991 amendments to N.C.G.S. § 97-25 and N.C.G.S. § 97-2, although not yet in effect or controlling when the present case arose, merely clarified the legislative intent already expressed in our Workers' Compensation Act by emphasizing the legislature's continuing differentiation between medical expenses and "compensation" under the Act. In "An Act to make certain technical amendments to the Workers' Compensation Act and to increase assessments by the Industrial Commission for the Second Injury Fund," the legislature in 1991 added a new subsection (19) to N.C.G.S. § 97-2, creating and defining the term "medical compensation," and also inserted the term "medical compensation" into N.C.G.S. § 97-25 to replace the previous description of expenses covered under that section. 1991 N.C. Sess. Laws ch. 703, §§ 1,3.[2] The term "compensation," however, continues to be defined separately in N.C.G.S. § 97-2(11) as "the money allowance payable to an employee or to his dependents as provided for in this Article, and includ[ing] funeral benefits provided herein." The 1991 amendments made it clear that under the Act, the relief obtainable as general "compensation" is different and is separate and apart from the medical expenses recoverable under the Act's definition of "medical compensation."

---

2. The General Assembly amended N.C.G.S. § 97-25, effective 15 June 1991, by striking the following language and replacing it with the phrase "Medical compensation":

> Medical, surgical, hospital, nursing services, medicines, sick travel, rehabilitation services, and other treatment including medical and surgical supplies as may reasonably be required to effect a cure or give relief and for such additional time as in the judgment of the Commission will tend to lessen the period of disability, and in addition thereto such original artificial members as may be reasonably necessary at the end of the healing period. . . .

1991 N.C. Sess. Laws ch. 703, § 3. The legislature also added subsection (19) to N.C.G.S. § 97-2, which reads:

> Medical Compensation.—The term 'medical compensation' means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period.

1991 N.C. Sess. Laws ch. 703, § 1.

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

The dissent would include medical payments provided under N.C.G.S. § 97-25 within the meaning of general "compensation" in the Act, thereby ignoring the interpretation of the term "compensation" which is supported by the language of the Workers' Compensation Act and which we have applied for over 50 years. *See Morris v. Chevrolet Co.,* 217 N.C. 428, 432, 8 S.E.2d 484, 486 (1940). As we have observed in the past, an interpretation  .

> consistently given to the statute is as much a part of the statute as if expressly written in it. We have no right to change or ignore it. If it is to be changed, it must be done by the Legislature, the law-making power. If, in its wisdom, a change is desirable, it can readily do so.

*Hensley v. Cooperative,* 246 N.C. 274, 281, 98 S.E.2d 289, 294 (1957), *quoted in O'Mary v. Clearing Corp.,* 261 N.C. 508, 511, 135 S.E.2d 193, 195 (1964). In our interpretation of the meaning of "compensation" under the Workers' Compensation Act, we adhere to the time-honored doctrine of *stare decisis,* and we decline to take the contrary position set out by the dissent.

We acknowledge that the terms of N.C.G.S. § 97-47 tend to be ambiguous and somewhat confusing. In interpreting provisions of the Workers' Compensation Act, we note that the legislature intends "for the Workers' Compensation Act to be construed liberally in favor of the injured worker to the end that its benefits not be denied upon technical, narrow or strict interpretation." *Harrell v. Harriet & Henderson Yarns,* 314 N.C. 566, 578, 336 S.E.2d 47, 54 (1985) (citing *Cates v. Hunt Construction Co.,* 267 N.C. 560, 148 S.E.2d 604 (1966) ). While a court should not construe the Act liberally in favor of an employee if such construction contravenes "the plain and unmistakable language of the statute," ambiguous provisions properly are interpreted in the employee's favor. *See Rorie v. Holly Farms,* 306 N.C. 706, 709-10, 295 S.E.2d 458, 461 (1982).

[2] Bearing in mind the well-established definition of "compensation" within the Workers' Compensation Act and the legislative intent that provisions of the Act be interpreted liberally in favor of an employee-claimant, we conclude that N.C.G.S. § 97-47 does not apply to an employee's right to claim medical payments under the Act. This section allows the Commission to review a prior award only for the purpose of making "an award ending, diminishing, or increasing the *compensation* previously awarded." (Emphasis added). Because "compensation" does not include the payment of

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

medical expenses, this provision does not affect the Commission's grant or denial of an employee's request for the payment of those expenses. The Commission's authority for requiring an employer to pay the medical expenses of an injured employee is established by the terms of N.C.G.S. § 97-25, which mandates that certain medical treatments "shall be provided by the employer" and establishes the conditions which must be present before the Commission may order the employer to pay for treatments.

The dissent's reliance on the portion of N.C.G.S. § 97-47 which states that "except in cases in which only medical or other treatment bills are paid, no such review shall be made after 12 months from the date of the last payment of bills for medical or other treatment," is inapposite. This provision, although it does refer to cases in which the Commission's prior award allowed medical payments only, nonetheless applies only to the Commission's review for the purpose of "ending, diminishing, or increasing the *compensation* previously awarded." (Emphasis added). The provision applies to situations in which the Commission in its first award found that, while a workplace injury did require medical treatment, the injury did not result in any decreased earning capacity which would entitle the employee to general "compensation." If, within the time limitation following the Commission's award, the employee developed a decreased earning capacity as a result of the injury, the Commission then could reopen the case and award the general "compensation" which it previously had denied. This is not such a case.

In sum, we conclude that the legislature always has provided for, and continues to provide for, two distinct components of an award under the Workers' Compensation Act: (1) payment for the cost of medical care, now denominated "medical compensation," which consists of payment of the employee's medical expenses incurred as a result of a job-related injury; and (2) general "compensation" for financial loss other than medical expenses, which includes payment to compensate for an employee's lost earning capacity and payment of funeral expenses. While N.C.G.S. § 97-47 requires a claimant to show a "change of condition" before the Industrial Commission may amend an order awarding general "compensation" as that term is and always has been defined in the Act, N.C.G.S. § 97-25 permits the Industrial Commission to order the employer to pay new or additional medical expenses, even if there has been no material change in the employee's condition or in available medical treatments. The opinion of the Court of Appeals holding to the

HYLER v. GTE PRODUCTS CO.

[333 N.C. 258 (1993)]

contrary in *Shuler v. Talon Div. of Textron,* 30 N.C. App. 570, 577, 227 S.E.2d 627, 631 (1976), is overruled.

This interpretation of N.C.G.S. § 97-25 and N.C.G.S. § 97-47 is consistent with the overall intent of the Workers' Compensation Act to allow recovery by employees for work-related injuries. *See Evans v. AT&T Technologies,* 332 N.C. 78, 86, 418 S.E.2d 503, 509 (1992). As we so often have stated in the past, the Act should be liberally construed to effectuate its purpose; we will not deny an employee's benefits by a "narrow, technical, and strict construction" of the Act. *Gunter v. Dayco Corp.,* 317 N.C. 670, 677, 346 S.E.2d 395, 399 (1986) (citing *Keller v. Wiring Co.,* 259 N.C. 222, 130 S.E.2d 342 (1963) ). Construing the Act as the defendants and the dissent propose would require a narrow interpretation of the Act, contrary to its terms and contrary to the legislature's intent to "compel industry to take care of its own wreckage." *Barber v. Minges,* 223 N.C. 213, 216-17, 25 S.E.2d 837, 839 (1943). We are not free to give the Act any such narrow interpretation. Accordingly, the unpublished decision of the Court of Appeals, reversing the order of the Industrial Commission in favor of the defendants and remanding this case to the Commission, is affirmed.

Affirmed.

Justices WEBB and PARKER did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

The claimant was injured on 2 January 1980. The parties entered into a Form 21 Agreement (Agreement for Compensation for Disability), which was approved by the Industrial Commission on 27 February 1980. The Form 21 Agreement and two Form 26 Agreements (Supplemental Memorandum of Agreement as to Payment of Compensation), both of which were approved by the Commission, became the final decision of the Commission. *Pruitt v. Knight Publishing Co.,* 289 N.C. 254, 221 S.E.2d 355 (1976) (upon approval by the Industrial Commission, Forms 21 and 26 have the full force and effect of a final award by the Commission). The claimant was paid all benefits for temporary-total disability and for permanent-partial disability (50% of the left leg) and all medical expenses due him under the law. The claimant's last check for compensation was forwarded to him on 25 February 1985. A Form 28B dated two

HYLER v. GTE PRODUCTS CO.

[333 N.C. 258 (1993)]

days later, 27 February 1985, summarizing benefits paid, was issued by the employer and contained the form language "that upon receipt of this form your compensation stops. If you claim further benefits, you must notify the Commission in writing within two (2) years from the date of the receipt of your last compensation check." The Form 28B was on file with the Commission, was considered by the Commission in its determination of the claim, and there is no suggestion in the record that Mr. Hyler, who was represented throughout by counsel, did not receive this form.

There was nothing unusual about the case up to this point, as everything was handled in strict compliance with the procedures and forms properly prescribed by the Commission. The claimant received everything he was entitled to under the law as it was then understood to be. The overwhelming majority of workers' compensation claims are resolved consensually in exactly the same manner as this case was originally resolved — compensability is admitted; medical expenses are paid; the injured claimant is compensated for temporary-total and permanent-partial disability pursuant to Form 21 and Form 26 Agreements; and subject to a change in condition, this resolution of the claim is approved by the Commission and becomes final, a Form 28 is filed, and the claim is closed.

On 19 February 1986, the claimant, through counsel, made an application for additional compensation based upon a claimed change in condition, which, by stipulation of the parties, cannot be shown.

After the final determination of the claimant's workers' compensation claim, and after the last payment of compensation to the claimant, this Court rendered its decision in *Little v. Penn Ventilator Co.*, 317 N.C. 206, 345 S.E.2d 204 (filed 2 July 1986), allowing the recovery of future medical expenses in the original award of the full Commission. Thus, pursuant to *Little*, the precise relief sought in this case may now be awarded in all cases in the Commission's original determination of the claim.

Some eight months following our decision in *Little*, by letters dated 10 March 1987 and 15 July 1987, the claimant expanded his application to include a request for additional medical benefits as well as compensation, thus seeking to take advantage of the change in the law announced in this Court's decision in *Little*, and thereby to obtain an award of future medical expenses.

HYLER v. GTE PRODUCTS CO.

[333 N.C. 258 (1993)]

The matter of the claimant's entitlement to additional benefits for a change of condition and future medical expenses came on for hearing on 9 January 1989. The parties stipulated and agreed that the claimant could produce no evidence of a change in condition. On 16 August 1989, the Deputy Commissioner's opinion and award was filed. The Deputy Commissioner concluded (1) that the claimant had not sustained a material change for the worse in his condition, and (2) that the claimant was entitled to future medical expenses for treatment to the extent that such treatment tended to effect a cure of, give relief from, or lessen his disability from the compensable knee injury.

The opinion for the full Commission was filed on 31 August 1990. The full Commission held that, absent a finding of entitlement to future medical benefits at the time of the original determination, the provisions of N.C.G.S. § 97-47 apply and require a showing of change of condition before future medical benefits could be awarded. Because it was admitted that there was no change in condition, the full Commission held that the claimant was not entitled to an award of future medical benefits. However, the full Commission went on to treat the claimant's motion to reopen pursuant to N.C.G.S. § 97-47 as a "mislabeled" motion based upon newly discovered evidence and remanded the case to the Deputy Commissioner for a determination as to whether or not the claimant has or could present medical evidence showing his entitlement to future medical benefits, which evidence he could not, with reasonable diligence, have discovered and produced prior to the final payment of compensation under the Form 26 Agreements.

On appeal, the Court of Appeals first found that the full Commission had correctly interpreted and applied the Workers' Compensation Act when it held that the claimant's claim for future medical expenses was barred by N.C.G.S. § 97-47 because the claimant could not show a change of condition subsequent to the last payment of compensation. Astoundingly, however, the Court of Appeals then ruled that the claimant, on "equitable considerations," was entitled to an award of future medical expenses despite the statutory bar to such an award that the court had just recognized to exist, remanded the case for the entry of an award of future medical expenses, and reported its decision unpublished. It is apparent to me that the supposed "equitable considerations" are nothing more than the recognition that the law had changed after the original determination of the claim at issue and that the claimant

would be better off if his claim were handled under the law as it now exists under *Little*.

This Court in *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 337 S.E.2d 477 (1985), expressly and unequivocally held that the Industrial Commission was without power to reopen an otherwise final decision solely because of subsequent developments in the law.

I believe that the majority grievously errs in holding that N.C.G.S. § 97-47 is applicable only to awards of "compensation" and not to claims for awards of medical expenses only. By its holding, the majority has, first, dispensed with the requirement of a showing of a change of condition as a prerequisite for reopening, for additional medical or treatment expenses, a claim previously closed by a final award of the Industrial Commission, and, second, has abrogated the one-year statute of limitations for reopening final awards where the award was for medical expenses only, leaving no time limitation for reopening such claims. These consequences of the majority's decision in this case all grow out of the majority's basic error in concluding that the word "compensation" as used in N.C.G.S. § 97-47 means only compensation paid for lost wages and earning capacity and that it does not include "medical and hospital expenses . . . as it always has been defined in the Workers' Compensation Act." Admittedly, that definition of compensation is referred to in a number of our cases and can be supported by the statutory definition. However, when read as a whole, our Act does not support that limited definition. It requires only a cursory reading of the Act to conclude that the meaning of the word "compensation" depends on the context in which it is used in the Act. There are many provisions of the Act that will not accommodate the narrow definition of "compensation" afforded it by the majority, particularly in the context of the basic provision stating the circumstances under which an employer is liable to pay benefits. Indeed, to construe "compensation" to exclude medical and hospital expenses would wholly exclude medical treatment from employers' duties in many contexts:

N.C.G.S. § 97-3 (duty of employer and employee, respectively, to accept the provisions of the Article to respectively pay and accept "compensation" for injury or death).

N.C.G.S. § 97-7 (the state, municipal corporations, and other political subdivisions and their employees may not reject Chapter 97 "relative to payment and acceptance of compensation").

N.C.G.S. § 97-9 (every employer shall secure the payment of "compensation to his employees" in the manner prescribed in the Act).

N.C.G.S. § 97-13(c) (state prisoners may be entitled to "compensation" under the Act).

N.C.G.S. § 97-20 (employee's "rights of compensation granted by this Article" have priority on employer's assets).

N.C.G.S. § 97-21 (employee's claims for "compensation" not assignable; employee may not "waive his right to compensation under this Chapter").

N.C.G.S. § 97-22 ("no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death").

N.C.G.S. § 97-23 ("[n]o defect or inaccuracy in the notice shall be a bar to compensation" unless the employer proves prejudice).

N.C.G.S. § 97-24 ("right to compensation under this Article shall be forever barred unless a claim be filed with the Industrial Commission within two years"; any claimant whose "claim for compensation" is determined not to be covered by the Act shall have one year after the rendition of final judgment declaring coverage to exist to file suit).

N.C.G.S. § 97-25 (employee's refusal to accept treatment bars the employee from "further compensation").

N.C.G.S. § 97-27 (employee who "claims compensation" shall submit himself for examination; if he refuses, his "right to compensation" is suspended until the refusal ceases).

N.C.G.S. § 97-32 (if, before determination of disability, the employee refuses employment suitable to his capacity, he shall not be entitled to "any compensation" during continuance of his refusal).

N.C.G.S. § 97-36 (if employee's injury occurs out of state, he is entitled to "compensation" as if it had occurred in this state only under certain conditions).

N.C.G.S. § 97-51 (where employee has two or more employers, all contribute to "compensation" payable to employee unless otherwise agreed by employers).

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

N.C.G.S. § 97-58 (the right to "compensation" for occupational diseases and radiation injuries is barred unless timely filed).

N.C.G.S. § 97-64 ("compensation" is paid for silicosis and asbestosis under this Act).

N.C.G.S. § 97-82 (memorandum of agreement between employee and employer "in regard to compensation" shall be filed with the Commission and becomes enforceable by court decree).

N.C.G.S. § 97-83 (if employee and employer fail to reach agreement "in regard to compensation" within fourteen days of the injury, application for a hearing may be filed).

N.C.G.S. § 97-94 (employers subject to the "compensation provisions" of this Article shall file evidence of compliance, and those who fail to do so shall be guilty of a misdemeanor).

The Court of Appeals, in *Shuler v. Talon Div. of Textron*, 30 N.C. App. 570, 227 S.E.2d 627 (1976), was presented with a claim for future medical expenses, which claim was made after the filing of Form 28B and the last payment of compensation. The Court of Appeals in *Shuler* correctly and squarely held that N.C.G.S. § 97-47, and the express requirement of a showing of a change in condition embodied therein, applied and precluded an award of future medical expenses. The Court of Appeals stated:

> Therefore claimant's procedure was inextricably tied to G.S. 97-47, which requires notice within twelve months of the last payment of compensation and a showing of change of condition. Where an award directs the payment of both compensation and medical expenses, then the injured employee has one year (two years effective 1 July 1974, G.S. 97-47 as amended) from the last payment of compensation pursuant to the award in which to file claim for further compensation upon an alleged change of condition. Where the award directs the payment of medical bills only, an extension of the award would not be permissible unless there is a showing of change of condition since the original award. If the legislature had intended that no showing of a change of condition was necessary where only additional medical expense payments are sought, it would have so provided.

*Id.* at 576-77, 227 S.E.2d at 631 (emphasis added) (citation omitted). The majority, without any analysis or discussion of *Shuler*, overrules it.

In the case sub judice, the claimant has stipulated that he cannot show a change in condition. Hence, he clearly is statutorily barred from reopening this claim for an award of future medical expenses.

N.C.G.S. § 97-47 is the provision in the Workers' Compensation Act that authorizes the reopening and modification of a final award. N.C.G.S. § 97-47 expressly provides:

> Upon . . . the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review <u>any award</u>, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article . . . . No such review shall affect such award as regards any moneys paid but no such review shall be made after two years from the date of the last payment of compensation pursuant to an award under this Article, <u>except that in cases in which only medical or other treatment bills are paid, no such review shall be made after 12 months from the date of the last payment of bills for medical or other treatment, paid pursuant to this Article.</u>

N.C.G.S. § 97-47 (1991) (emphasis added).

Many, if not most, workers' compensation claims are closed by a final award of medical expenses only. N.C.G.S. § 97-47 clearly recognizes and provides for review of "cases in which only medical or other treatment bills are paid." The statute provides in the clearest terms that "on the grounds of a change in condition the Industrial Commission may review <u>any</u> award." (Emphasis added.) The statute clearly provides that a change of condition is a prerequisite to a review of "any" previous award. It does not limit review only to cases where there has been an award of "compensation," that is, compensation as defined by the majority to be payments for lost wages and earning capacity. The statute authorizes the Commission on such a review to end, diminish, or increase a previous award of "compensation," and it is clear to me that that authority extends to previous awards of medical expenses only.

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

The underlined words relating to medical expenses are meaningless if, as the majority has ruled, the Commission is limited to "ending, diminishing, or increasing the compensation previously awarded" (emphasis added), if compensation does not include medical and treatment expenses. If the Commission may end, diminish, or increase only "compensation" for lost wages and earning capacity, there would be no need to limit the time for review of "bills for medical or other treatment, paid pursuant to this Article." *Id.*

I fail to see how the majority can conclude that the legislature did not intend for an injured employee to make any showing of a change in condition before his employer would be required to pay for further medical services or treatment. If that conclusion were correct, what possible meaning would one attribute to the underlined words limiting the time for review of a previous award that related only to medical and treatment expenses?

The majority complains that reliance in this dissent on the language of N.C.G.S. § 97-47 is inapposite. I strongly disagree. If, as the majority contends, the provision relating solely to medical expenses applied to allow only a subsequent award of "compensation" where none was originally made, the words would not be "end, diminish, or increase the compensation previously awarded." These words clearly contemplate a termination of or change in an award previously made. If the legislature had intended otherwise, it would have used words such as "may award" or "may grant an award" or words of similar import that do not contemplate a termination or change in an award of compensation previously entered.

It is important to note that the effect of the majority opinion is not only to no longer require a showing of a change of condition, but also to do away with any statutory time limitation, after a final award of medical benefits only, to file for additional benefits for "medical, surgical, hospital, nursing, and rehabilitation services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief" (now defined as "medical compensation"). N.C.G.S. § 97-2(19) (1991); N.C.G.S. § 97-25 (1991). I simply cannot believe the legislature intended that such awards might be reopened without any limitation as to time whatsoever. Not surprisingly, the majority does not discuss or even evidence an awareness of this effect of its decision.

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

If the legislature had intended that there should be no time limitations for reopening claims to recover additional medical expenses (now defined as "medical compensation"), it would not have provided that employers may destroy records of claims five years after a claim is closed by an award. N.C.G.S. § 97-24. Under the majority's holding today, many cases can be reopened for additional medical and treatment expenses in which the records of the original awards have already been destroyed. It seems clear to me that the legislature fixed the five-year period after which records may be destroyed because it contemplated that no case could be reopened for any purpose after the final award except where there is a change of condition and a claim is asserted within two years of the final award where "compensation" for lost earnings was awarded and within one year if the original award was only for medical expenses. The records would then be available for a reasonable period beyond any possible reopening.

The majority implies that its decision in this case does not constitute a change in existing law. Nothing could be further from the truth. Employees, employers, and the Commission have heretofore constantly observed the change of condition and time limitations requirements of N.C.G.S. § 97-47 in reopening all cases where the final award has been entered, specifically including cases where the claimant sought only additional medical expenses. Any practitioner with even limited experience in the workers' compensation field will recognize that the majority opinion is a major change in the law rivaling those changes wrought by *Woodson, Gupton, Whitley, Kennedy,* and *Bridges*.[1]

---

1. *Gupton v. Builders Transport,* 320 N.C. 38, 357 S.E.2d 674 (1987) (a claimant entitled to a remedy under either scheduled benefits under N.C.G.S. § 97-31 or permanent-partial disability benefits under N.C.G.S. § 97-30 may select the remedy offering the more generous benefits); *Whitley v. Columbia Lumber Mfg. Co.,* 318 N.C. 89, 348 S.E.2d 336 (1986) (an employee who qualifies as being totally and permanently disabled is not precluded by the "in lieu of all other compensation" clause of N.C.G.S. § 97-31 from recovering lifetime compensation under N.C.G.S. § 97-29); *Kennedy v. Duke Univ. Med. Center,* 101 N.C. App. 24, 398 S.E.2d 677 (1990) (once the claimant proves that his wage earning capacity has been impaired by injury, respondent-employer must come forward to show not only that suitable jobs are available, but also that claimant is capable of getting one); *Bridges v. Linn-Corriher Corp.,* 90 N.C. App. 397, 368 S.E.2d 388 (shifting burden from employee to employer to show that claimant is employable and therefore no longer disabled under the Act, that jobs are not only generally available, but that claimant can obtain a job taking into account his specific limitations), *disc. rev. denied,* 323 N.C. 171, 373 S.E.2d 104 (1988); *see also Woodson v. Rowland,* 329 N.C. 330, 407 S.E.2d 222 (1991) (permitting tort actions by employees against their employers

I make no personal judgment as to the overall desirability of the change. I do, however, recognize that the majority has wrought a major change, and I strenuously object to that change being made in an already precariously balanced compensation system by this Court rather than by the legislature. I would remind the writer of the majority opinion of his words in his recent dissent in *Woodson*, in which I joined: " 'Changes in the Act's delicate balance of interests [between employee and employer] is more properly a legislative prerogative than a judicial function.' " *Woodson v. Rowland*, 329 N.C. 330, 362, 407 S.E.2d 222, 241 (1991) (quoting language of the opinion of the Court of Appeals in *Woodson v. Rowland*, 92 N.C. App. 38, 42, 373 S.E.2d 674, 677 (1988) ).

Changes of this magnitude in our state's workers' compensation plan require public policy considerations that fall within the exclusive province of the legislature, and rightly so. When this Court makes such a drastic change in long-settled workers' compensation law, it does so with little or no information upon which to weigh the fallout of the change. When it is done by the legislature, there is discussion and debate and input from interested and informed parties, and benefits and detriments of the change may be weighed. Legislative changes of this magnitude are ordinarily made effective prospectively only, N.C.G.S. § 97-31.1; and there is generally sufficient lead time before the effective date of the change to allow employers and their carriers to adjust premiums and set up reserves to cover anticipated increases in payments to injured employees. When this Court makes such changes, they may or may not apply retroactively, and there is no time for appropriate alterations in premiums and reserves. Such is the case here. It appears that the result of the majority's opinion will be that future cases will require open-ended reserves. The losses will apparently fall on the carrier who covered the risk at the time the injury occurred. If the original carrier no longer covers the risk, it will be unable to recoup the loss through loss experience based rates. If that carrier is no longer writing workers' compensation coverage, the loss will be borne by the Workers' Compensation Security Fund, N.C.G.S. § 97-114, in which funds must also be

---

for nonintentional acts resulting in injury); *Pickrell v Motor Convoy, Inc.*, 322 N.C. 363, 368 S.E.2d 582 (1988) (creating a presumption that employee's death occurred by a work-related cause, thereby making the death compensable whether the medical cause of death is known or unknown).

adjusted. If the legislature makes such a change, these problems are unlikely to arise.

Because of tough policy decisions made by our legislature through the years, North Carolina has traditionally been more conservative in the benefits provided and has had among the lowest workers' compensation premiums in the nation. While this is but one of many factors that influence industries and businesses that are considering locating or relocating facilities with significant employment opportunities, it is an important one and one that has been and continues to be influential in our ability to attract new industry and to diversify our economy. The need to create new jobs and attract new industry can hardly be overstated in these difficult economic times. This consideration obviously comes to the forefront as premiums rise more rapidly in this state than in our sister adjoining states.

In August 1991, the North Carolina Rate Bureau requested a 41.8% rate increase, the Commissioner of Insurance approved a 15.8% increase, and the Rate Bureau and the Commissioner settled at that figure. A year later, in October 1992, the Rate Bureau requested a 58.4% increase; the Commissioner approved a 23.4% increase; and, after the Rate Bureau and the Commissioner failed to agree on the increase, the Rate Bureau implemented a 40.3% increase subject to refund. The requested increase for 1992 in the surcharge for the Workers' Compensation Assigned Risk Pool for high risk employers who cannot purchase coverage on the market was 20%, the Commissioner has approved a 14% increase for 1993, and the increase was settled at that figure. There exists a real threat that if the companies currently writing workers' compensation insurance do not receive significant rate relief, a number of them will stop writing coverage in North Carolina. That this is a real possibility and not an idle threat is evidenced by the fact that the nation's largest workers' compensation carrier, Liberty Mutual, served notice in December 1991 that in December 1992, it would no longer write new workers' compensation policies in seventeen states, including North Carolina.

The impact of the aforementioned decisions which have drastically changed the law has been very substantial. It has resulted in sharply higher medical costs (resulting from increased premiums) and an increasing number of lawsuits by injured workers against their employers. It is noteworthy that the average medical cost

**HYLER v. GTE PRODUCTS CO.**

[333 N.C. 258 (1993)]

in workers' compensation cases has nearly tripled since 1985. The increased premiums are felt by the small businessman as well as the larger employer, as the law requires that virtually every employer of three or more persons carry the coverage. When these increased costs are passed on, as they surely will be, they will ultimately be borne by the members of the general public, most of whom are employees themselves, who are the consumers of manufactured products and services.

In summary, at no time has the claimant attacked the propriety of the Form 21 and Form 26 Agreements as of the time they were entered and approved. There is no claim of fraud, mistake, overreaching, or even inadvertence with respect to these agreements. As stipulated by the parties, all of the facts now asserted in support of the claimed entitlement of an award of future medical benefits were fully known to the parties prior to the 1 November 1984 date of the second Form 26 and well before the date of the last payment of compensation on 25 February 1985. By virtue of the Form 21 and Form 26 Agreements, the claimant was provided with all benefits to which he was entitled under the law as it was then understood to be.

The majority opinion will potentially permit the reopening of a vast and indeterminate number of final awards of the Industrial Commission. What is at stake here is the concept of finality that is essential to the proper, economical, and efficient operation of administrative, quasi-judicial, and judicial bodies. If the final determinations of such bodies can be reopened without any time limitation whatsoever, nothing would ever be decided. A strong adherence to the doctrine of finality is as essential to the sound economical and efficient operation of the Industrial Commission as it is to the operation of the courts. It is essential to the effective operation of the whole workers' compensation system that consensual resolutions of cases such as the one here be encouraged. A holding depriving such agreements of finality can only do great harm to the efficient functioning of the Industrial Commission and to the operation of the entire workers' compensation system.

In view of the drastic changes wrought by this and other cases cited herein, perhaps it is time for the legislature to review and reassess the delicate balance of interests between employee and employer under our Workers' Compensation Act.