The Industrial Commission may set aside an agreement for compensation approved by the Commission on the grounds of mutual mistake. N.C.G.S. § 97-17. A mutual mistake of fact existed in this case regarding the Form 21. Both parties signed the Form 21 representing to the Commission that plaintiff's average weekly wage was $200 per week when it actually was $241.88 per week. There is no suggestion that the figure represented a compromise on disputed or uncertain data. Since the information — the wages plaintiff had been paid — was within the actual control of the defendant, this entry was either mistaken or fraudulent, and there is no evidence of bad intent. Therefore, the terms of the Form 21 award to the contrary should be vacated, and the compensation at the rate of $161.25 substituted in this award.
Consequently, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with MODIFICATION of the Deputy Commissioner's Findings of Fact numbered 4-6, 8-10, 14, 15; Conclusions of Law numbered 2-5; and Award paragraphs 1-4. Also, the Full Commission adds Finding of Fact number 8 and Conclusion of Law number 4.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except as noted herein above, the Full Commission makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. A North Carolina Industrial Commission Form 21 Settlement Agreement approved April 8, 1991 appears in the Commission file.
2. On September 5, 1990, the parties were bound by and subject to the North Carolina Worker's Compensation Act.
3. On said date the employer-employee relationship existed between the parties.
4. As of said date PMA Group provided the coverage to the employer as provided under said Act.
5. That the plaintiff sustained an injury by accident arising out of and in the course of the employment with the defendant-employer on September 5, 1990.
6. The Form 21 Settlement Agreement reflects that on said date the plaintiff was earning an average weekly wage of $200.00.
7. That the plaintiff has been paid compensation through May 28, 1991 and the plaintiff is making no claim for [additional periods of] compensation prior to said date of May 28, 1991.
* * * * * * * * * * *
FINDINGS OF FACT
1. On September 5, 1990, the plaintiff, approximately 35 years of age with a ninth grade education, was employed by the defendant-employer as a machine operator cutting plastic parts. Prior to employment with defendant, plaintiff worked in furniture manufacturing and as an electrician.
2. On September 5, 1990, the plaintiff sustained an injury by accident in the course and scope of his employment with the defendant-employer as he was picking up a box weighing approximately 80 pounds and twisting his back at which time he felt a sharp pain in his right hip.
3. The plaintiff was provided by the defendants with medical care and treatment of a conservative nature and released to return to work on May 27, 1991.
4. Plaintiff made a reasonable attempt to return to work, returning to light duty work with the defendant-employer on May 27, 1991 and working that day and half of May 28, 1991. Defendant assigned him work sitting in a hard-back chair and standing on a concrete floor for eight hour work shifts. This was the only light duty position defendant offered plaintiff. However, plaintiff experienced pain from working on the concrete floor, was unable to continue, and left the job to seek further medical treatment.
5. Neurosurgeon Dr. Scott McCloskey treated plaintiff from January 23, 1991 until July 8, 1991. After reviewing two myelograms and a post-myelogram CAT scan, the only abnormality that Dr. McCloskey saw was a very small disk bulge at L5-S1 that did not compromise the existing nerve roots at that level. An EMG, plain x-rays, and bone scans were normal. But because plaintiff seemed genuine in his complaints, Dr. McCloskey referred plaintiff to neurosurgeon Dr. Charles L. Branch of the Bowman Gray School of Medicine. Upon examining plaintiff and reviewing plaintiff's radiographic studies, including a myelogram and post-myelogram CT, Dr. Branch's impression was that plaintiff had an injury to his lumbar spine that had not completely resolved. The injury was to the L5-S1 with some annular tearing or weakening with a substantial bulge radiographically. On January 7, 1992, after reviewing an MRI scan, Dr. Branch believed plaintiff had improved with regard to the small disc herniation at L5-S1, but felt plaintiff's condition would persist for sometime. In Dr. McCloskey's opinion, plaintiff reached maximum medical improvement in October of 1991 after he had finished his physical therapy. Based on his past experience with plaintiff and the available records, Dr. McCloskey gave plaintiff a 10% permanent partial impairment rating. In Dr. McCloskey's opinion, plaintiff's accident at work caused the problems which he observed.
6. During the period prior and subsequent to May 1991, the plaintiff has been conservatively medically treated and surgical procedures have not been medically recommended.
7. In September of 1991, the plaintiff was referred to physical therapy. However, he stopped this therapy, contacting his doctor, because it was no longer benefitting him and actually was putting more pressure on his back.
8. Plaintiff saw Bernadette Amerein, a vocational rehabilitation counselor, from October 25, 1991 until February 13, 1992. Ms. Amerein counselled plaintiff to consider working on his GED and retraining to give him more job options.
9. The plaintiff reached maximum medical improvement with respect to his back condition in October , 1991, when the pain from which he complains grew no better or worse.
10. The plaintiff has sustained a ten percent permanent partial disability of the back.
11. The plaintiff has lost additional time from work as a result of the injury which he sustained on September 5, 1990 from May 28, 1991 to October 1, 1991.
12. The preponderance of the evidence indicates that plaintiff's actual average weekly wage during his employment with the defendant employer was $241.88, rendering a compensation rate of $161.25, which is fair and just to both parties. The employer's Form 19 indicates plaintiff worked 45 hours a week at $5.00 per hour, which renders an average weekly wage of $225.00. The testimony of employer's director of operations, Mr. Ryan, was that the average weekly wage figure of $200.00 was based simply on plaintiff's hiring rate, that he would not contest plaintiff's testimony that he earned $5.75 per hour, and that overtime was available to the plaintiff. The best evidence regarding plaintiff's correct compensation rate is the plaintiff's testimony that during the seven or eight months he worked for defendant he was earning $5.00 an hour for approximately half that time and $5.75 an hour for the other half, and that he averaged five hours of overtime per week. N.C.G.S. § 97-2(5).
13. On November 6, 1990, the plaintiff and the defendants entered into a Form 21 Settlement Agreement which stated that the plaintiff was earning an average weekly wage of $200.00 per week with a compensation rate of $133.34 per week, which agreement was approved by the Industrial Commission on April 8, 1991, and pursuant to which the plaintiff was paid the sum of $133.34 per week from September 5, 1990, the date of his injury, until May 27, 1991, when he returned to work. However, this compensation rate was based upon the erroneous information that plaintiff worked 40 hour weeks at $5.00 per hour the entire time of his employment. Since both parties signed their names to the Form 21 agreement, this was a mutual mistake of fact.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. The plaintiff is entitled to temporary total disability compensation benefits from May 28, 1991 to October 1, 1991 at the rate of $161.25 per week, and also the difference between the compensation rate of $161.25 and the $133.34 he was actually paid for temporary total disability between September 5, 1990 and May 27, 1991. N.C.G.S. §§ 97-2(5) and 97-29.
2. The plaintiff is entitled to permanent partial disability compensation benefits for thirty weeks at the rate of $161.25 per week, commencing October 1991, in respect to the 10% impairment of his back. N.C.G.S. §§ 97-2(5) and 97-31(23).
3. The average weekly wage and compensation rate terms of the Form 21 Settlement Agreement approved April 8, 1991 must be set aside due to mutual mistake of fact. N.C.G.S. § 97-17.
4. Plaintiff is obligated to pay bills for the above-referenced medical services, and such other medical compensation as may tend to effect a cure, give relief, or shorten the period of disability resulting from plaintiff's injury by accident of September 5, 1990. N.C.G.S. §§ 97-25 and 97-2(19);Hyler v. GTE Products Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's motion to set aside the average weekly wage and compensation rate stated in the Form 21 Settlement Agreement dated November 6, 1990 and approved by the Commission on April 8, 1991 is GRANTED.
2. The defendants shall pay to the plaintiff, in one lump sum, temporary total disability compensation benefits at the rate of $161.25 per week for the periods May 28, 1991 to October 1, 1991, and from September 5, 1990 to May 27, 1990, with credit for compensation paid during the earlier period at the rate of $133.34 per week, subject to the attorney fee hereinafter approved.
3. The defendants shall pay to the plaintiff permanent partial disability compensation benefits for thirty weeks at the rate of $161.25 per week, in one lump sum, subject to the attorney fee hereinafter approved.
4. An attorney fee of twenty-five percent of the above compensation is approved for plaintiff's attorney Randy Duncan, Esq., and shall be deducted from the compensation above-provided and paid directly to Mr. Duncan.
5. The defendants shall pay the costs of medical compensation incurred by reason of the subject compensable injury when the bills for same have been submitted to and approved by the Commission.
6. The defendants shall bear the costs.
 S/ _______________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _____________________________ COY M. VANCE COMMISSIONER
S/ _____________________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss 1/19/95