***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACTS
1. Plaintiff suffered a catastrophic injury to her dominant right hand on February 21, 1991, which injury involved severe amputations to her middle three fingers plus a tip amputation to her right thumb. The claim was accepted by defendants on a Form 21 Agreement. Medical expenses and services were provided by defendants until August 20, 1998, which services included periodic psychological therapy as well as ongoing medical and occupational therapy treatment including prosthetic services at Duke University Medical Center.
2. Plaintiff also received treatment for problems with her right shoulder resulting from the physical strain and difficulty of using her prostheses.
3. During the summer of 1999, defendants for the first time stated they had no further responsibility for plaintiff's prosthetic devices and related treatment, given certain legislative changes in 1994 to the Workers' Compensation Act regarding prosthetic devices.
4. The two issues for determination are: (a) whether plaintiff had a medical need for her prostheses within the meaning of the Workers' Compensation Act, and (b) whether defendants had any legal basis to deny medical compensation for the prosthetic devices and therapy.
5. Plaintiff's main amputation involved the middle fingers of her dominant right hand. She had less than a joint left on both her right index and right middle fingers, and she lost a full joint of her distal right ring finger. Plaintiff's thumb amputation involved only the distal tip. There was no amputation to plaintiff's right small finger, which only suffered a knuckle injury.
6. Plaintiff was originally provided with prosthetic devices for her right thumb tip as well as her three right middle fingers, but since those devices were more for appearance than function, she was later fitted for a more functional set that she has used at work and at home since that time.
7. Plaintiff quickly realized that the right thumb tip prostheses was really not desirable or necessary and she discontinued use of it and had no further replacements made of that particular device.
8. The "rubbery substance" of which the prostheses are made deteriorates through the process of normal use, and thus plaintiff has to undergo periodic replacements as well as occasional repairs of such features as prosthetic fingernails, which sometimes detach from the rest of the prosthetic device.
9. The prostheses are attached by means of suction, and they are waterproof so that plaintiff can wash them. In terms of function, the finger prostheses assist plaintiff to a limited extent in typing and to a greater extent in writing with her dominant right hand at work or in public. Plaintiff much prefers the "working set" to the purely cosmetic set, and thus has not had the latter fully replaced for several years, while she has replacements and repairs to the functional set on a regular basis, at least annually.
10. Dr. Scott Levin, an orthopedic and plastic surgeon at Duke University, prescribed prosthetic devices for plaintiff. When asked about the functional component of plaintiff's need for prosthetic devices, Dr. Levin explained, "Well, function can be, within medicine, use of the hand, perception of the hand, perception of body image, psychological issues as well as functional issues."
11. When asked to give an expert opinion regarding plaintiff's needs for prosthetic devices, Dr. Levin stated unequivocally that these devices were medically necessary to bring about a cure or give relief. Dr. Levin gave exactly the same opinion as to plaintiff's need for repair of these prosthetic devices on a periodic basis for the remainder of her life.
12. Dr. Levin referred plaintiff to prosthetic specialist Jane Bahor, also at Duke University Medical Center. Ms. Bahor is an internationally renowned expert on prosthetics for the hand, face, and other body parts that are missing. Ms. Bahor is an anaplastologist who makes prosthetic restorations that are realistic in appearance and whose work involves an artistic as a well as a medical background.
13. Ms. Bahor described the extent of plaintiff's amputations and the nature of the prosthetic devices she provides. It was Ms. Bahor's understanding from plaintiff that the prosthetic fingers were used for various purposes in her duties working for defendant-employer, including typing, pushing papers, and holding or grasping objects. She described plaintiff as very motivated to use these devices, and stated that plaintiff appeared to be using the prostheses every day.
14. Ms. Bahor further explained that the greatest functional challenge involved the index finger and its "tapping capabilities," which included the ability of the prosthetic index finger to touch a tabletop, for example, or touch a keyboard key. Tapping would also be involved in the process of picking up a pencil using the index finger and thumb. Ms. Bahor further elaborated on the differences between the functional versus mostly cosmetic prosthetic devices.
15. As to the need for periodic replacement, Ms. Bahor explained that this need was due to the nature of the materials used in the production of these devices, the constant use of the devices and the necessity of taking them off and on daily. It was Ms. Bahor's understanding that plaintiff "used hers religiously, and they frequently needed repairs before their year was up."
16. Ms. Bahor testified in detail regarding prosthetic production, replacement, and repair costs, as well as the parts that would periodically need to be replaced or repaired. Both Dr. Levin and Ms. Bahor testified and the Commission finds that said devices are medically necessary to bring about a cure or give for plaintiff's condition and that plaintiff will continue to need prosthetic devices which must be refitted, refined, and replaced on a periodic basis for the remainder of her life.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The North Carolina Workers' Compensation Act requires, among other things, that "medical compensation shall be provided by the employer." N.C. Gen. Stat. § 97-25. The applicable provision of N.C. Gen. Stat. § 97-2(19) in effect on the date of plaintiff's 1991 injury by accident provided:
 "Medical Compensation. — The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period." [emphasis added]
In 1994 the General Assembly amended this section to read:
 "Medical Compensation. — The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances." [emphasis added]
The legislative intent in adopting the language allowing replacement of artificial members was to clarify that an award of medical compensation for a prosthesis reasonably includes any necessary replacements in order to effect a cure, provide relief, or lessen the period of disability.
2. In 1973 the General Assembly amended N.C. Gen. Stat. § 97-25, to add the language "to effect a cure or give relief," which has been interpreted by numerous cases since the amendment. In particular, the North Carolina Supreme Court held, in Little v. Penn Ventilator Co.,317 N.C. 206, 345 S.E.2d 204 (1986), that defendant-employer could be liable for future medical expenses necessary to "effect a cure or give relief." Id. at 211, 345 S.E.2d at 208. The Court further explained that, as a result of the 1973 amendment, there were three separate and independent grounds upon which future medical expenses could be required of an employer: (1) to lessen the period of disability, (2) to effect a cure, or (3) to give relief. Id. In 1991 the General Assembly moved the "effect a cure or give relief" language to the definition of "medical compensation" in N.C. Gen. Stat. § 97-2(19).
4. In Hyler v. GTE Products Co., 333 N.C. 258, 425 S.E.2d 698 (1993), the Supreme Court stated that in Little the Court had explained for the first time the obvious effect of the 1973 amendment to broaden the employee's right to recover medical treatment. In Hyler, the parties agreed that a risk existed that plaintiff's prosthetic knee would fail and would have to be replaced. Defendants in that case argued that despite the fact that plaintiff might be entitled to future medical expenses under N.C. Gen. Stat. § 97-25, plaintiff was not entitled to medical expenses unless he proved a change of condition under N.C. Gen. Stat. § 97-47. The Supreme Court rejected defendants' argument, holding that the change of condition provisions do not apply to an employee's right to claim medical payments under the Act. Id. at 266,425 S.E.2d at 703.
5. Plaintiff's prostheses, including past and future replacements, are necessary to effect a cure, provide relief, or lessen the period of disability pursuant to N.C. Gen. Stat. §§ 97-25 and 97-2(19), and this entitlement is ongoing in the future pursuant to Hyler v. GTE ProductsCo., 333 N.C. 258, 425 S.E.2d 698 (1993).
6. Plaintiff is entitled to such medical compensation, including prosthetic devices and replacements, incurred or to be incurred by plaintiff as a result of her admittedly compensable injury of February 21, 1991. N.C. Gen. Stat. § 97-25.
7. Defendants did not unreasonably contest their liability and therefore plaintiff is not entitled to fees and costs pursuant to N.C. Gen. Stat. § 97-88.1.
8. Plaintiff is entitled to recover costs, including reasonable attorney's fees, pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to provide all necessary medical compensation, including prosthetic devices and replacements, for the remainder of plaintiff's life, which medical compensation has been rendered necessary by plaintiff's work-related injury.
2. Defendants shall pay the costs in this matter, including plaintiff's attorney's fees in the amount of $500.00. This sum shall be paid directly by defendants to plaintiff's attorney.
This the ___ day of May 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER