Plaintiff complained of persistent, unresolved pain three years after a cervical fracture under compensable circumstances, and more than a year and a half after agreeing to a permanent partial disability award on an I.C. Form 26. While he believed the symptoms were somewhat worse with some activities, there has been no lost time or appreciable diminution in his capacity to earn wages. As the Deputy Commissioner found, no change of condition has been shown, and plaintiff's present request for an additional examination (and any treatment that might result) falls outside the parameters of the second opinion on impairment authorized by G.S. § 97-27 (b) when an impairment rating is given by the treating physician or another doctor of defendants' choosing. However, the prior Award entitles plaintiff to such further medical compensation as may reasonably be necessary to give relief from the compensable condition (see Hyler v. GTE Products Co.,333 N.C. 258, 425 S.E.2d 698 (1993)), and under the circumstances of this case — recited in the modified Finding of Fact #10 — plaintiff is entitled to an appropriate evaluation at defendants' expense.
Consequently, upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission substantively MODIFIES Findings of Fact 6 and 10, and REVERSES the result, as follows:
Based upon the competent evidence adduced at the hearing before the Deputy Commissioner, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff is a 39 year old married male who completed the ninth grade, but has not since received any further formal education, nor vocational or technical training. Since returning to work following the subject injury, he has been unable to do the heavy lifting, bending and work at heights required by his welding job for defendant-employer; but rather, merely stands and welds, earning essentially the same wage as in his former position.
2. At the time of his injury, plaintiff was employed by defendant Standard Electric Company as a welder responsible for installing air conditioning units requiring the type of heavy lifting and working at heights he could thereafter no longer do because of the admittedly compensable permanent back injury giving rise hereto. The injury occurred on April 4, 1992 when he fell more than ten feet, resulting in a fracture at the C6-7 level of his cervical spine as well as other multiple injuries, including skull and left knee fractures, that were the subject of the Industrial Commission's prior Awards of temporary total, temporary partial and permanent partial disability.
3. Plaintiff's principal treating physician for his permanent back injury was Dr. F. Douglas Jones, a Greenville neurosurgeon, who provided a conservative course of treatment for his resulting cervical fracture, including initially a halo to ensure proper alignment of the spine during healing, followed by a Miami collar.
4. By January 19, 1993, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following his cervical fracture, at which time he retained the sixteen percent permanent partial disability of the back that was the subject of the last Industrial Commission Award herein, and was concurrently able to return to light work for one of defendant-employer's subsidiaries, Tharrington, building and repairing heaters according to the stipulated functional capacity evaluation. He was unable to return to the type of welding that he had previously done for defendant-employer involving heavy lifting and working at heights. Despite his permanent back injury and associated continued neck pain, dizziness and numbness, plaintiff was able to continue light duty work for the defendant-employer's subsidiary until leaving its employ in October 1994. Immediately thereafter, and through the date of the hearing, he was employed by Trinity welding gas tanks, and receives essentially the same wages there that he did for defendant-employer doing the type of heavy welding prohibited by the same back injury.
5. Because he had continued to experience dizziness, neck pain and headaches from his permanent back injury since returning to work more than two years earlier in January 1992, plaintiff requested that he be allowed to have a second opinion by a physician of his choosing at defendant's expense (specifically, Dr. Theodore Pitts of the Durham Orthopedic Clinic), to determine whether there is anything else that can be done for his continued symptoms.
6. Plaintiff was entitled to an independent medical evaluation by another physician of his choosing if he was dissatisfied with the rating of his treating physician, Dr. Jones, pursuant to provisions of G.S. § 97-27 (b), and plaintiff did exercise that right by seeing Dr. Atassi in June of 1993. Thereafter, the parties' Form 26 Agreement to pay permanent partial disability benefits in respect to a 16% impairment of plaintiff's back — initially dated "5-13, 1993" by the carrier — was submitted to and approved by the Commission on September 9, 1993.
7. In June of 1993, after he had reached maximum medical improvement from his permanent back injury in January of that year, and had been rated and released by Dr. Jones, plaintiff underwent an independent medical evaluation by a physician of his choosing, Dr. Inad Atassi, a Fayetteville neurosurgeon, because of the same symptoms of neck pain, dizziness and headache that he continues to experience from his permanent back injury, resulting in his present request for another second opinion. However, there is no convincing medical or other evidence that plaintiff has sustained a substantial change for the worse in his condition since he was released by Dr. Jones in January 1993 or evaluated by Dr. Atassi in June of that year, either due to an increase in his resulting permanent partial disability, or the same permanent back injury having become incapacitating. But rather, plaintiff has continued to experience the same type of symptoms of neck pain, headache and dizziness from his permanent back injury, and has been able to continue regularly working despite them since January 13, 1993.
8. Upon seeing him for a second opinion in June 1993, Dr. Atassi noted that plaintiff "was told that [his] symptoms would go away, but apparently they never did." He scheduled plaintiff for a diagnostic MRI, which showed good healing of his cervical fracture and no evidence of a disc herniation, or cord compression, or nerve root compression. As a result, Dr. Atassi felt that plaintiff's cervical fracture was completely healed, and he would not likely have any further problems in the future. He opined plaintiff was able to resume regular activities without restriction, did not require any further medical treatment, and if he had "any further difficulties, he [could] always come back . . . in the future." However, plaintiff has continued to experience the same non-incapacitating symptoms of neck pain, dizziness and headache since reaching maximum medical improvement from the involved neck injury in January 1993 and returning to work.
9. When plaintiff sought another opinion by a physician of his choosing (Dr. Pitts) at defendant-employer's expense, defendant-employer refused and instead referred plaintiff back to his treating physician, Dr. Jones. Dr. Jones saw him on July 18, 1994 and again on September 19, 1994. After reviewing additional cervical spines films, and on the basis of his examination, Dr. Jones found satisfactory healing of plaintiff's earlier cervical fracture, did not feel that further diagnostic studies were warranted, and released him to return on a PRN basis.
10. While plaintiff has testified that he is somewhat more symptomatic when lifting, he has failed to prove by the greater weight of the evidence that he has sustained a substantial change of condition affecting his capacity to earn wages since the prior Award. The consistent findings of Drs. Jones and Atassi suggest that it is highly unlikely that any surgical intervention could be justified. However, it was recommended in the Functional Capacity Assessment of February, 1993 that "an exercise program to improve his overall endurance" and other physical therapies would ameliorate his symptoms, and the record fails to show that he has received such treatment. In light of the plaintiff's credible complaints of pain, which can be reasonably associated with the objectively documented condition resulting from his injury of April 4, 1992, and which have persisted over an extended period of time, such that a patient responsible for the costs of his or her own care could reasonably be expected to consult another physician seeking relief, the plaintiff is entitled to an examination by a physician specializing in physical medicine and such further medical compensation services as may reasonably give relief from the consequences of the compensable injury.
* * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. Plaintiff has not sustained a substantial change in condition. G.S. § 97-47.
2. Plaintiff was afforded the second opinion examination authorized by G.S. § 97-27 (b), and under the present circumstances, is not entitled to another.
3. Plaintiff is entitled to such further examinations and treatments as may reasonably be necessary to give relief from the compensable condition, including his current, persistent pain symptoms. G.S. §§ 97-2 (19) and 97-25; Hyler v. GTE Products Co.,333 N.C. 258, 425 S.E.2d 698 (1993).
* * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay for an examination by a physician specializing in physical medicine, and for such further medical compensation as may reasonably give relief from the compensable condition, when the statements for such services are approved by or under the rules of the Industrial Commission. Plaintiff may apply to the Commission for further Orders to resolve any dispute between the parties over selection of the physician.
2. The Commission will approve an appropriate attorney's fee for the valuable services of plaintiff's counsel if and when a petition for this is submitted.
3. Defendants shall pay the costs due this Commission.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
S/ _______________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md