Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the deputy commissioner as follows
The Full Commission finds as fact and concludes as matters of law the following, which were agreed upon by the parties at the hearing before the deputy commissioner, in a Form 21 Agreement for Compensation for Disability approved on June 6, 1990, and in a Pre-Trial Agreement dated August 22, 1995 as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and Aetna Casualty and Surety Company is the carrier on the risk.
2. An employer-employee relationship existed between plaintiff and defendant-employer on January 5, 1990.
3. Plaintiff sustained an injury by accident arising out of and in the course of her employment on January 5, 1990 resulting in an injury to her back and neck.
4. Plaintiff's average weekly wage was $272.22 yielding a compensation rate of $181.49.
5. Plaintiff received temporary total disability compensation from March 14, 1990 through January 19, 1993.
6. Plaintiff received permanent partial disability compensation for a 25% permanent partial impairment to her spine pursuant to a March 4, 1993 Form 26 Agreement.
7. Industrial Commission Form 28B dated January 31, 1994 and Form 24 dated January 21, 1993 are stipulated into evidence.
8. Documents concerning plaintiff from the following are stipulated into evidence:
 a. 14 pages of records from Miller Orthopaedic Clinic for the period January 8, 1990 through November 2, 1994;
 b. 10 pages of records from Drs. Lassiter and Hipp for the period January 9, 1990 through June 1, 1995;
 c. 15 pages of records from Mercy hospital for the period January 24, 1990 through May 31, 1995;
d. August 20, 1990 letter from M.W. Brawley, M.D.;
 e. 18 pages of records from Orthopaedic Hospital of Charlotte for the period March 12, 1991 through December 18, 1991;
 f. 3 pages of records from Gaul Orthopaedic Group for the period December 4, 1991 through December 18, 1991;
 g. 14 pages of records from Rehab Advantage for the period June 11, 1991 through July 21, 1992;
 h. 6 page report dated August 5, 1992 from Comprehensive Rehabilitation Associates, Inc.;
 i. January 19, 1993 letter from Raymond C. Sweet, M.D.; and,
 j. March 8, 1993 letter from Mark Brown, Senior Claims Representative for the defendant-carrier.
* * * * * * * * *
The Full Commission adopts the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
1. In January 1990 plaintiff was employed by defendant church as a minister's assistant. She had had a history of back problems and had previously undergone three operations to her spine, two to her low back and one to her neck. Fusions were performed in both areas. The last operation occurred in 1988 and she was released to return to work in May of that year.
2. On January 5, 1990 plaintiff sustained a compensable injury by accident when she slipped and fell at work. Following the injury she initially complained of pain from her buttock into her left leg and she sought treatment from Dr. Chapman. Within a short time, however, she was also experiencing neck and left arm pain and she went to Dr. Lassiter for that problem. She had been treated by those physicians or their offices for her previous problems.
3. Dr. Chapman referred plaintiff to physical therapy which gave her relief from her low back problems. He released her from care on January 30, 1990. Dr. Lassiter was of the opinion that plaintiff's cervical spine problems would resolve with time so he allowed her to continue working; however, in March 1990 she developed worse symptoms and he ordered diagnostic tests which revealed a ruptured disc at C6-7. Consequently, on April 24, 1990 he performed surgery to decompress that interspace.
4. Plaintiff continued to experience symptoms following the surgery but no further surgery was recommended. In February 1991 Dr. Lassiter referred her to a pain management center where she underwent physical therapy and work hardening. During an exercise in work hardening, she injured her low back. Dr. Wilder treated her for the lumbar symptoms with several epidural steroid injections which gave her some temporary relief, but her symptoms persisted and he referred her to Dr. Dardin. Dr. Dardin examined plaintiff on December 4, 1991. He was of the opinion that the fusion at L4-5 was not solid and discussed surgery with her. She then returned to Dr. Chapman for another opinion and he concurred with the diagnosis and also felt that she had L5-S1 foraminal stenosis. Dr. Chapman recommended surgery at both levels. Plaintiff elected to have Dr. Chapman perform the operation.
5. After the surgery by Dr. Chapman, plaintiff underwent rehabilitation. Although she continued to experience some difficulties, Dr. Chapman released her to return to work in January 1993. He also gave her an additional permanent partial impairment rating which was attributable to her injury in January 1990. Dr. Lassiter had also previously rated her for her additional cervical spine impairment.
6. Plaintiff did not return to work when Dr. Chapman released her. She and her husband decided that she would not go back to work. The decision was based in part on the assumption that they would be moving to Nevada since Mr. Segrest's employment was being transferred there. However, plaintiff also did not agree with Dr. Chapman's assessment of her employability.
7. Defendants had previously admitted liability for benefits under the Workers' Compensation Act and had paid compensation to plaintiff for temporary total disability since March 14, 1990 when she first began missing work as a result of the injury. In March 1993 the parties entered into a Form 26 agreement providing for payment of permanent partial disability in accordance with the impairment ratings she had been given by both doctors. The agreement was approved by the Industrial Commission.
8. Plaintiff did not receive further medical treatment until August 1993 when she saw Dr. Kirchmayer for complaints of bilateral hip pain and pain in her left leg. When Dr. Chapman saw her on September 29, 1993, she was improved. He advised her at that time that she could expect to have flare ups from time to time. He subsequently examined her on January 24, 1994 and on November 2, 1994 when he recommended that she consider a spinal cord stimulator trial in that her fusion appeared to be solid and her continuing symptoms were probably the result of scar tissue. Defendants would not provide the procedure. Therefore, plaintiff requested approval from the Industrial Commission.
9. On April 17, 1995 plaintiff returned to Dr. Lassiter complaining of more intense pain in her cervical region with some associated numbness. He ordered a myelogram which was negative so he did not recommend further surgery. He did recommend a pain clinic, however.
10. Dr. Chapman evaluated plaintiff again in September 1995. He found evidence of nerve irritation which he attributed to scarring. Since he could not prescribe the usual anti-inflammatory medications due to her stomach problems, he renewed his recommendation for the spinal cord stimulator trial.
11. The spinal cord stimulator trial is reasonably necessary to provide plaintiff relief from symptoms resulting from her injury by accident.
12. Although plaintiff submitted evidence indicating that she had sustained a change of condition, no medical evidence was offered addressing whether her ability to work had been affected by the change in her symptoms. Since she had thought she was not able to work in January 1993 when Dr. Chapman released her to return to her regular job duties, medical testimony was necessary to establish further disability. Consequently, she did not prove that she suffered additional disability as a result of her injury by accident.
13. Plaintiff has also moved that defendants replace her TENS unit. At some point apparently the device was provided by defendants, but she misplaced it and was unable to find it. Since she had lost it, defendants would not buy her another one. There was no evidence that the disappearance of the TENS unit was due to misconduct on plaintiff's part. Rather, it appeared to have been lost due to normal human error. However, there was no medical evidence addressing whether use of the device was currently recommended as reasonably necessary to give her pain relief.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. In that further disability has not been established, it is not necessary to find whether plaintiff sustained a change of condition. G.S. § 97-47.
2. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident including the spinal cord stimulator trial recommended by Dr. Chapman. G.S. § 97-2 (19); G.S. § 97-25; Hyler v. GTE Products Co.,333 N.C. 258 (1993).
3. It appears that plaintiff would be entitled to have defendants replace the TENS unit since it was not misplaced due to misconduct on her part if it were shown to be reasonably necessary to provide her with pain relief. G.S. § 97-2 (19); G.S. § 97-25.
* * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including those arising from the spinal cord stimulator trial recommended by Dr. Chapman.
2. In that the medical evidence did not address plaintiff's current need for the TENS unit, defendants are not specifically ordered to provide it at this time.
3. Defendants shall pay the costs.
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ _______________ LAURA K. MAVRETIC COMMISSIONER
BSB:be