The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
MOTION RULINGS
1. Plaintiff's motion to strike all testimony by Dr. Schulhof, Dr. Kroll, and plaintiff, from the March 27, 1996 hearing, as well as any records or communications pertaining to Dr. Greenspan, is HEREBY DENIED.
2. Plaintiff's motion for medical treatment, weekly benefits, and interest, to the extent it is in conflict with the award section of this Opinion and Award, is HEREBY DENIED.
3. Plaintiff's motion for taking further evidence is HEREBY DENIED.
* * * * * * * * * *
Accordingly, the Full Commission find as fact and conclude as matters of law that the parties stipulated into evidence the following documents and medical records as
STIPULATIONS
1. All the Industrial Commission forms filed in this action.
2. All of plaintiff's medical records.
3. Three pages of medical records from Memorial Mission Hospital dated May 26, 1983.
4. An Industrial Commission Form 19 dated May 26, 1983, from an earlier workers' compensation claim filed by plaintiff.
5. Eight pages of medical records from St. Joseph's Hospital dated July 13, 1981, through August 26, 1981.
6. An Industrial Commission Form 19 dated July 13, 1981, from an earlier workers' compensation claim filed by plaintiff.
7. Employer's accident report dated May 4, 1994.
8. Employer's accident report dated October 16, 1994.
9. Employer's Record of Team Member counseling of plaintiff dated December 21, 1994.
* * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is a forty-four year old white male with a tenth grade education and some limited technical training. On May 3, 1994, he was employed by employer Thomas and Howard as an Order Selector. On that date, plaintiff was riding on the back of a pallet jack driven by a co-worker which hit a piece of metal and plaintiff was thrown onto the floor.
2. When plaintiff began to experience back and shoulder pain, he was seen by Dr. Leslie Cargile, the company doctor, on May 9, 1994. Dr. Cargile diagnosed plaintiff with a lumbar spine strain with possible shoulder tendonitis or rotator cuff injury. Dr. Cargile treated plaintiff conservatively, placed him under work restrictions, and found that his shoulder pain resolved but that his cervical and lumbar strain worsened. As a result, plaintiff was referred to Dr. Herbert O. Phillips, IV, an orthopedic surgeon.
3. On May 23, 1994, Dr. Phillips examined plaintiff, injected his sacroiliac joint with Celestone, and placed him on physical therapy for two weeks. On June 6, 1994, plaintiff returned to Dr. Phillips, who found that plaintiff had experienced excellent relief from the injection and returned plaintiff to light duty work with continued physical therapy. On July 19, 1994, plaintiff returned to Dr. Cargile complaining of increased back pain and Dr. Cargile released and removed plaintiff from work until he could be seen by Dr. Phillips.
4. On July 21, 1994, plaintiff was seen for a second opinion by Dr. Larry Kroll, also an orthopedic surgeon. At that time, Dr. Kroll observed that plaintiff has been doing reasonably well in his recuperation until three days previous when he had a relapse with discomfort and pain in the right sacroiliac and low back area with some extension into the thigh. At that visit, the plaintiff informed Dr. Kroll that he had "no previous history of similar significant problems relating to his back." Dr. Kroll recommended further testings to determine the extent and nature of plaintiff's condition. Due to alleged claustrophobia plaintiff could not undergo the MRI scan and did not want to undergo a myelogram.
5. On October 19, 1994, Dr. Phillips completed a return to work form for plaintiff, allowing him to return to light duty work.
6. On November 30, 1994, Dr. Phillips found plaintiff to be at maximum medical improvement and rated him with a three percent permanent partial impairment of the back.
7. On December 15, 1994, plaintiff was once again seen by Dr. Kroll who diagnosed plaintiff with left shoulder and arm pain of a radicular nature extending into the hand, and degenerative disc disease of a chronic nature including the cervical spine. On that date, Dr. Kroll spoke with plaintiff and made note of plaintiff's history of an automobile accident occurring many years before at which time plaintiff's head hit a windshield and resulted in a significant head and neck injury. Dr. Kroll also noted that plaintiff had a full range of motion in his shoulder, and that X-rays revealed old degenerative changes at C5-C6 area. Dr. Kroll scheduled a myelogram and a CT scan of plaintiff's cervical area which revealed significant cervical disc disease of the right and left sides at levels C5 through C7 with some nerve root involvement and effacement. As a result, he referred plaintiff to Dr. Schulhof for a neurosurgical consultation.
8. On March 2, 1995, plaintiff was seen by Dr. Larry Schulhof, a neurosurgeon. During the course of that examination, plaintiff specifically denied "having any neck complaints prior to this workmen's' comp injury." It was Dr. Schulhof's impression that plaintiff had significant cervical spondylosis and disc disease. Because surgery for this condition would entail an anterior diskectomy and fusion at levels C5 through C7, Dr. Schulhof decided to treat plaintiff conservatively. On July 12, 1995, plaintiff returned to Dr. Schulhof with complaints about his lower back, and as a result, Dr. Schulhof recommended that plaintiff undergo an MRI scan in an open scanner. The myelogram and post myelographic CT scan showed a significant right-sided disc protrusion which was causing significant nerve root irritation. It was Dr. Schulhof's opinion that plaintiff's lower back pain would have to be the determining factor in whether plaintiff should undergo surgery to his back.
9. On August 29, 1995, plaintiff returned to Dr. Schulhof with complaints regarding his neck and arm symptoms. At that point, Dr. Schulhof encouraged plaintiff to try and live with his neck and arm symptoms as long as possible since surgery would involve a two-level fusion.
10. On March 16, 1994, approximately two months before beginning work at Thomas and Howard, plaintiff went to the chiropractic offices of Drs. Kevin and Murray Greenspan, known as Swannanoa Valley Chiropractic Clinic. On that date, plaintiff completed a "patient history" form in which he stated that his major complaint was neck and lower back pain and that he had a "thirty-year history" of this condition. Plaintiff indicated on the form that he suffered from neck pain or stiffness and numbness, tingling or pain in his arms, hands and fingers. Plaintiff also indicated that he had difficulty in excessive standing, walking, sitting, riding, bending, lifting or twisting and that he had shoulder pain and low back pain and stiffness. Dr. Greenspan indicated in plaintiff's medical reports that the plaintiff was having cervical problems at level C7 and that he moved about stiffly.
11. At the first hearing on August 24, 1995, James Jackson, plaintiff's employer immediately prior to plaintiff's employment with Thomas and Howard, testified that plaintiff complained constantly about back problems. From time to time plaintiff also had to lie down on the job and stretch out on the floor to ease his back pain. Mr. Jackson also stated that he thought plaintiff would have gotten used to the job, but he never appeared to do so. Mr. Jackson stated that the back pain problems occurred during the entire time that plaintiff worked for him, even after he began the second job at Thomas and Howard.
12. In 1981, plaintiff was involved in a previous workers' compensation accident when he injured his back while pushing a stalled vehicle out of the roadway. As a result of this accident, plaintiff stayed at St. Joseph Hospital from August 11, 1981 through August 26, 1981, for back treatment and was thereafter advised to remain out of work for two weeks. On May 26, 1983, plaintiff was involved in a motor vehicle accident when a car turned in front of plaintiff's vehicle. The available medical reports show that plaintiff was taken to Memorial Mission Hospital with complaints of intense pain localized to the lumbar region.
13. After reviewing the statements made by plaintiff to Dr. Greenspan in his "pain history" on March 16, 1994, Dr. Kroll formed the opinion that plaintiff's experience with neck and back problems, to some significant degree, certainly preceded the on-the-job injury of May 1994. Dr. Kroll also felt that while the injury of May 1994 may have accelerated or exacerbated plaintiff's pre-existing neck or back condition, he did not have an answer satisfactory to himself as to the degree. As a result of plaintiff's statements made to Dr. Greenspan, it was Dr. Kron's opinion that plaintiff had a permanent partial impairment of ten percent of his back and ten percent to his neck prior to the May 1994 incident at Thomas and Howard. Dr. Kroll could not sufficiently or convincingly state whether plaintiff had any increase in his impairment as a result of the May 1994 accident. It was also Dr. Kroll's testimony that plaintiff's back problems had resolved by December 15 of 1994.
14. Dr. Schulhof testified at the hearing on March 27, 1996, that other than plaintiff's complaints, he had nothing to indicate that plaintiff had suffered a change in condition as a result of the May 1994 accident at Thomas and Howard. Dr. Schulhof stated that based upon plaintiff's statements to Dr. Greenspan in March of 1994, plaintiff had exacerbated an underlying and previously existing back and neck condition in the May 1994 accident at Thomas and Howard. However, he was unable to sufficiently or convincingly determine the extent of the exacerbation or the pre-existing impairment of plaintiff before and after the May 1994 accident.
15. After the May 3, 1994 accident, plaintiff was out of work on temporary total disability from May 9, 1994, through June 5, 1994. Thereafter, he returned to light duty work at employer where he worked from June 8, 1994 through June 9, 1994. He again went out on temporary total disability from June 10, 1994, through June 13, 1994, after which he returned to full-time work. Thereafter, he again went out on temporary total disability from June 29, 1994 through July 5, 1994. Plaintiff then returned to work and once again went out on temporary total disability from July 18, 1994 through October 16, 1994.
16. During the time that plaintiff was on light duty work at employer he was cited several times for failing to stay within his work area and for using the telephone at times when he was not on break or lunch. On December 21, 1994 he was terminated from employment for taking unspecified and unauthorized breaks at times when he was not authorized to do so. Plaintiff testified at the hearing that he spent a good deal of time on the telephone speaking with the Industrial Commission about his case and that this kept him from doing the light duty work at times.
17. After plaintiff was terminated for failure to do his light duty job, light duty work continued to exist at employer.
* * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff suffered from a thirty-year history of neck and low back pain with accompanying arm symptoms, and this condition was so severe that he sought chiropractic treatment on March 16, 1994 from Dr. Greenspan prior to the accident on May 3, 1994 at Thomas and Howard.
2. This significant back condition was temporarily and acutely exacerbated by the May 3, 1994 Thomas and Howard accident, but the temporary acute period of exacerbation resolved by at least December 15, 1994, according to plaintiff's treating physicians. From May 3, 1994 until December 15, 1994, plaintiff was in a "healing period" as defined in Crawley v. Southern Devices,Inc., 31 N.C. App. 284, 229 S.E.2d 325 (1976) disc.rev. denied 292 N.C. 467, 234 S.E.2d 2 (1977). This healing period continued until plaintiff's condition resolved according to his treating physicians. Carpenter v.Industrial Piping, 73 N.C. App. 310, 265 S.E.2d 14 (1977). Whatever permanent partial disability plaintiff now retains existed prior to the May 3, 1994 accident at Thomas and Howard.
3. Plaintiff was terminated from his employment at Thomas and Howard on December 21, 1994, for reasons unrelated to the compensable May 3, 1994 accident at Thomas and Howard.
4. Plaintiff made numerous statements to his treating physicians and in the proceedings before the Deputy Commissioner regarding his back condition prior to the May 3, 1994, compensable injury at Thomas and Howard.
The undersigned, while acknowledging that plaintiff has been earnest and forthright in his statements concerning his condition as he believed it existed through the pendency of his claim, however find plaintiff's testimony and statements regarding the extent of his work-related injury to be not sufficiently convincing as to the causal elements of his claim beyond December 15, 1994.
5. Plaintiff was paid temporary total or temporary partial disability during all periods of time within which he was out of work, and he received his pre-injury average weekly wage during all periods of light duty work.
* * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff is entitled to no further temporary total or temporary partial disability benefits at this time.
2. Defendant shall pay all unpaid medical bills incurred by plaintiff as a result of this compensable injury on May 3, 1994, when bills for the same have been submitted through defendant's servicing agent to the Industrial Commission, and approved by the Commission.
3. Plaintiff shall be entitled to lifetime medical treatment as a result of the compensable May 3, 1994 accident pursuant toHyler v. GTE Products Co., 333 N.C. 258,425 S.E.2d 698 (1993), but only for treatment which is shown to relate to the compensable accident, and not for the pre-existing back, neck and arm condition.
4. Defendant shall pay the costs.
This case is ordered REMOVED from the Full Commission docket.
This the 6th day of February, 1997.
 S/ ____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ____________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER
JHB/nwm
02/03/97
Filed Date: 4/23/97