The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having considered all of the evidence the Full Commission affirms, with modifications, the Deputy Commissioners award of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On March 7, 1998, the parties were bound by and subject to the provisions of the North Carolina Workers Compensation Act, an employee-employer relationship existed between plaintiff and defendant-employer and the employer regularly employed more than three employees.
2. At all times in question, Safeco Insurance Company of America provided workers compensation coverage for defendant-employer.
3. The date of plaintiffs injury by accident is March 7, 1998.
4. Plaintiffs average weekly wage at the time of his injury by accident was $411.33, which yields a compensation rate of $274.23.
5. At the hearing, the parties submitted an indexed set of plaintiffs medical records marked Stipulated Exhibit 1.
6. Subsequent to the hearing, the parties submitted a Form 22 by letter dated August 19, 1999, from defense counsel.
7. In an undated letter received by the Commission on August 26, 1999, plaintiff submitted an additional exhibit consisting of a Nalle Clinic note dated March 26, 1998. Counsel for defendants agreed to stipulate said note by letter dated September 1, 1999.
***********
Based upon all the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is 49 years old. He began his employment with defendant-employer as a part-time hourly worker at a Wendys restaurant operated by the employer. The employer subsequently promoted plaintiff to manager of one of its stores. Plaintiff served as manager approximately one year. As a store manager, plaintiff received a salary and was responsible for supervising all aspects of his particular restaurant. In December 1997, the employer determined that plaintiff had closed his store early in violation of company policy. As a result, the employer demoted plaintiff to hourly status as a shift supervisor in January 1998.
2. Following plaintiffs demotion, an administrative error by the employer resulted in plaintiffs receiving his hourly wages as a shift supervisor and his regular salary as a store manager. During January and February 1998, plaintiff received $2,100.00 in salary he did not earn. The employer discovered the error in February 1998, and asked plaintiff to agree to a repayment plan for the excess compensation. Plaintiff refused. Due to plaintiffs refusal to consider any option for reimbursement of the overpayment, the employer terminated his employment effective March 30, 1998. While the salary overpayment was not due and payable when made, it also was not made during the period of disability.
3. On March 7, 1998, plaintiff reported to his assigned store at 7:00 a.m., where he was scheduled to open the restaurant along with Margaret Kelly. In preparing the store to open, plaintiff turned on the various pieces of equipment, including a stove used to heat chili. A small electrical fire sparked inside the stove. Plaintiff obtained a powder-type fire extinguisher and began spraying it into the stove, despite Ms. Kellys admonition that plaintiff unplug the unit. After several unsuccessful attempts at extinguishing the fire; plaintiff heeded Ms. Kellys instructions and unplugged the stove. The sparking stopped immediately. Following this incident, Ms. Kelly inspected the stove and found no evidence of charring or burning. A small wire had to be replaced in the unit. As a result of this incident, plaintiff got powder from the fire extinguisher into his mouth.
4. On March 7, 1998, plaintiff presented to the Nalle Clinic complaining of difficulty breathing. Dr. Goodman noted that plaintiff was a smoker. He referred plaintiff to his family physician for follow up.
5. On March 8, 1998, plaintiff saw Dr. Robert E. Harley with increasing symptoms and was admitted to University Hospital. During his hospitalization, plaintiff was evaluated by Dr. Montgomery, who noted a smoking history of two packs per day for many years and a medical history of possible seizure disorder, anxiety, and depression. Plaintiffs physical examination revealed eschar formation over the soft palate. Dr. Harley diagnosed plaintiff with a first-degree burn of the soft palate. Plaintiff was discharged on March 10, 1998, with instructions to follow up with Dr. Harley and Dr. Beamon.
6. Plaintiff saw Dr. Beamon on March 17, 1998, at which time a clinical examination of plaintiffs oral cavity revealed no obvious lesions and a hint of whitish material at the posterior aspect of the tongue. Dr. Beamon prescribed Magic Mouthwash. His records also reflected that plaintiff had been evaluated on February 17, 1998 for sleep apnea.
7. Dr. Harley saw plaintiff for a return visit on March 18, 1998, and released him to return to work on March 19, 1998.
8. Plaintiff returned to the Nalle Clinic on March 26, 1998, at which time he saw Dr. Krista. Examination of plaintiffs mouth and throat revealed a small ulceration on the right side of the tongue, a couple of fissures, and redness of the back of the throat. Dr. Krista released plaintiff to return to modified duty (limited speaking) on March 26, 1998 and instructed him to follow up with Dr. Gold on April 3, 1998.
9. Plaintiff saw Dr. Steven Gold on April 3, 1998 for a complete evaluation.
Dr. Gold examined plaintiffs mouth and throat and found no detectable abnormalities and no apparent sequelae. He advised plaintiff he had no residual abnormalities and required no further medical intervention. Dr. Gold released plaintiff to return to work immediately without restrictions.
10. Plaintiff reached maximum medical improvement on April 3, 1998, with no permanent partial disability or permanent impairment or damage to an important internal organ. Plaintiff was released to return to work on April 3, 1998 without restrictions.
11. Plaintiff was paid for the entire day on March 7, 1998. He missed a total of 19 days from work. Defendants paid temporary total disability for five days.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on March 7, 1998 when he inhaled fumes and powder from a fire extinguisher. N.C. Gen. Stat. 97-2(6).
2. As a result of his compensable injury by accident, plaintiff was temporarily totally disabled for a period of 19 days. Applying the seven-day waiting period, plaintiff is entitled to compensation for twelve days missed from work. N.C. Gen. Stat. 97-28. Defendants have previously paid plaintiff temporary total disability for a period of five days, leaving seven days remaining to be paid. The employer overpaid plaintiff wages and salary in the amount of $2,100.00, which payments were not due and payable when made. However, defendants are NOT entitled to credit for said overpayment against the seven days compensation due plaintiff. The $2,100.00 was NOT paid during the period of plaintiffs disability. N.C. Gen. Stat. 97-42.
3. Plaintiff reached maximum medical improvement on April 3, 1998, and was released to return to work on that date without restrictions. Plaintiffs unrestricted release to return to work rebuts the presumption of disability, and he is not entitled to disability compensation after April 2, 1998. Harrington v. Adams-Robinson Enterprises, 349 N.C. 218,504 S.E.2d 786 (1998). The evidence, inclusive of the medical evidence, fails to establish that plaintiff sustained any permanent partial disability or permanent injury or damage to an important internal organ. N.C. Gen. Stat. 97-31.
4. The evidence, inclusive of the medical evidence, fails to establish that plaintiff required or requires medical treatment after April 3, 1998 to effect a cure, give relief, or lessen disability from any condition causally related to his injury by accident. Hyler v. GTE Products Co.,333 N.C. 258, 425 S.E.2d 498 (1993). Based upon this record, plaintiff is not entitled to further medical compensation after that date. Id.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff for the remaining 7 days of uncompensated disability, at the rate of $274.23 per week.
2. Defendants shall pay all medical expenses incurred by plaintiff for treatment of his injury by accident on or about March 7, 1998, through and including April 3, 1998. Defendants are not entitled to a credit against their workers compensation liability for amounts paid to plaintiff prior to his period of disability.
3. Defendants shall pay the costs.
This 10th day of October 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER