***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the parties on or about 21 September 1992, the date of the alleged injury by accident.
3. The employer is a duly qualified self-insured, and Key Risk Management Services, Inc. is its servicing agent at all relevant times herein.
4. Plaintiff's average weekly wage was $552.27 at all relevant times herein.
5. The issues to be determined by the Commission are as follows:
 a) Whether plaintiff's claim is barred by the two-year statute of limitations in N.C. Gen. Stat § 97-24?
 b) Whether plaintiff sustained an injury by accident or developed an occupational disease while in the course and scope of employment with defendant-employer?
 c) If so, what, if any, benefits is plaintiff entitled to receive under the North Carolina Workers Compensation Act?
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff age 36, born September 4, 1964, was first employed by the City of Greensboro on October 3, 1988 as a groundskeeper. On July 6, 1990 plaintiff was promoted to nursery supervisor of Keeley Nursery. Keeley Nursery is a City-owned facility where container and field plants are grown for use in public areas and botanical gardens. Plaintiff resigned her employment with the City of Greensboro on May 15, 1996.
2. The plaintiff's supervisor during the time she was employed by the City of Greensboro was Mark Bush, the Division Manager over Special Facilities and Landscape Management. Bush lived on the grounds of Keeley Nursery, and due to the proximity of his home to the area in which plaintiff worked, he would see plaintiff at least once, and sometimes more often, every day.
3. From May 1996 to the present, plaintiff has been self-employed as a nursery owner. She works eight to ten hours per day, six days per week. Her duties include operating a small propagation nursery; preparing cuttings for rooting; weeding; fertilizing; pruning; sales to wholesale nurseries, and general bookkeeping. Plaintiff's responsibilities as a nursery owner include heavy physical labor, heavy lifting, and a substantial amount of stooping, bending, and twisting.
4. On October 13, 1992 plaintiff first informed Bush that she was experiencing back pain. Plaintiff could not cite one specific incident that could have caused her back pain and suggested only that it could have been due to continual bending, stooping, and lifting. On October 13, 1992 Bush and plaintiff completed a Form 19 together in the nursery office. Consistent with what plaintiff reported to Bush, the Form 19 reflects that plaintiff could not cite one specific incident that could have caused her back pain.
5. Plaintiff did not tell Bush that she had hurt her back while repairing an irrigation leak in a ditch or when she was lifting a bucket of cement while repairing the leak. Bush forwarded the Form 19 to the City of Greensboro's personnel office. Bush had no authority to make any decision about whether plaintiff's alleged back injury would be accepted or denied as a compensable workers' compensation claim. While Bush told plaintiff she did not have to use any personal leave or sick leave as a result of missing a few days from work, he did not tell plaintiff that her alleged injury had been or would be accepted as a compensable claim. Bush did not tell plaintiff "not to worry about it" or that it would be covered by workers' compensation. As a supervisor herself, plaintiff knew that Bush had no authority to make compensability decisions.
6. By October 13, 1992 plaintiff had already seen her family physician, Dr. Kevin L. Little, and she had undergone three sessions of physical therapy with Charles Brockmann, a physical therapist, seeking relief for back pain. When plaintiff first saw Dr. Little on September 28, 1992 complaining of back pain, she did not give him a history that included a specific accident or any injury to her back at work. Instead, plaintiff told Dr. Little that she simply awoke with back pain one morning, and that there was no previous injury or overuse. Plaintiff's medical treatment by Dr. Little in 1992 was not considered by his office to be a workers' compensation problem, because plaintiff did not give Dr. Little a history of any injury at work.
7. Dr. Little's initial impression was probable disc disease. He prescribed an anti-inflammatory medication and recommended that plaintiff rest for three days. He gave plaintiff a note on September 28, 1992, which authorized her to remain out of work until October 1, 1992.
8. Dr. Little subsequently ordered an MRI scan of plaintiff's lumbar spine, which revealed Grade I anterior spondylolisthesis with bilateral L5 spondylolysis and a moderate diffuse annular disc bulge with degenerative disc disease at L5-S1 with no neural impingement or herniation. Spondylolisthesis is a slippage of the vertebral bodies, one relative to another. In plaintiff's case, her spondylolisthesis was caused by a congenital pars defect at the L5 vertebra.
9. Dr. Little then recommended that plaintiff undergo physical therapy. Plaintiff was seen on three occasions by Charles Brockmann at Piedmont Physical Therapy. At her third and last appointment on October 12, 1992, Brockmann noted that plaintiff reported significant improvement with only minimal complaint of pain. She had been able to work with no appreciable increase in discomfort.
10. Plaintiff had reached maximum medical improvement from her 1992 back episode by the time she was discharged from physical therapy on October 12, 1992.
11. Defendant paid for plaintiff's medical expenses related to the MRI and three sessions of physical therapy with Mr. Brockmann. The last payment for these expenses was made on June 1, 1993.
12. During her employment with the City of Greensboro, plaintiff never sought or received any compensation for disability pursuant to the Workers' Compensation Act. Plaintiff did not miss more than seven days of work at a time as a result of her back complaints.
13. Plaintiff did not seek or receive any treatment for back or spine problems again until June 15, 1999, when she returned to Dr. Little. Between September 28, 1992 and June 15, 1999, plaintiff saw Dr. Little and his associates for other ailments, including headaches, nausea, and wrist pain. During this period of approximately six years and eight months, plaintiff never complained of back pain, and neither Dr. Little nor any of his associates noted any symptoms consistent with back pain or radiculopathy.
14. On June 15, 1999 Dr. Little noted that for a couple of months plaintiff had been experiencing chronic left lower back pain with some radiating pain down into her left heel. Dr. Little opined, and the undersigned hereby finds as fact, that the symptoms and condition for which he treated plaintiff in 1999 were caused by the type of work plaintiff was doing as a self-employed nursery owner at that time, which included a lot of lifting, bending, stooping, and digging.
15. After treating plaintiff conservatively for several months in 1999, Dr. Little referred plaintiff to Dr. Robert Nudelman, a neurosurgeon with Guilford Neurosurgical Associates in Greensboro. Dr. Nudelman first saw plaintiff on March 6, 2000. Plaintiff did not relate to Dr. Nudelman any specific injury that she believed was the source or cause of her back pain.
16. Dr. Nudelman reviewed films and an MRI scan, which revealed spondylolisthesis of L5 on S1 due to bilateral L5 pars interarticularis defects with associated degenerative change at the L5-S1 disc and a superimposed left L5-S1 disc herniation. He opined that each of these conditions was congenital or degenerative in nature.
17. In November 2000 plaintiff underwent a bilateral L5 Gill procedure, an L5-S1 disketomy, an interbody fusion with Ray cages and bone graft and posterior lateral fusion by Dr. Nudelman. Dr. Nudelman was unable to state that it is probable that plaintiff's alleged September 1992 accident caused, resulted in, or significantly contributed to the condition for which he treated plaintiff beginning in March 2000 or the subsequent surgery.
18. Plaintiff did well following her surgery, and she returned to work full-time in her nursery business in approximately February 2001.
19. Plaintiff first filed a claim for workers' compensation benefits with the Industrial Commission on 17 February 2000. On that date, she filed a Form 18 and for the first time identified a specific accident that she believed caused her back problems. The Form 18 alleges that on 21 September 1992, plaintiff was repairing an irrigation leak in a trench when she grabbed a bucket of cement, turned and felt a pull in her back.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did sustain an injury by accident arising out of and in the course of her employment or a specific traumatic incident of the work assigned on or about September 21, 1992, but she has failed to show a causal connection between the September 21, 1992 injury and the condition she suffered in 1999 and thereafter.
2. Plaintiff failed to file a claim with the Industrial Commission within two years after the alleged injury. Therefore, her claim is time barred and the Industrial Commission has no jurisdiction over this matter.
3. The payment in 1993 of nominal medical bills for treatment received by plaintiff in 1992 does not estop defendant from asserting the jurisdictional bar of § 97-24(a). Abels v. Renfro Corp.,100 N.C. App. 186, 187, 394 S.E.2d 658, 659 (1990).
4. Defendant did not make any false representations or conceal any material facts with the intent of misleading plaintiff. Moreover, plaintiff did not reasonably rely on any statements made to her by the employer. Therefore, defendant is not equitably estopped from asserting § 97-24(a) as a defense to this claim. Weston v. Sears Roebuck Co., 65 N.C. App. 309, 314, 309 S.E.2d 273, 276 (1983).
5. Plaintiff's back conditions from 1999 to the present, and any alleged disability and medical treatment resulting therefrom, were not caused, significantly contributed to, or materially aggravated by the alleged incident on September 21, 1992.
6. Plaintiff is not entitled to medical compensation pursuant to Hylerv. GTE Products Co., 333 N.C. 258, 425 S.E.2d 698 (1993). Because the back problems plaintiff began to experience in June 1999 and resulting treatment were not causally related to the accident on September 21, 1992.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for workers' compensation benefits must be, and hereby is, DENIED.
2. Each party shall pay its own costs.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER