***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and that the Commission has jurisdiction of the parties and the subject matter pursuant to the North Carolina Workers' Compensation Act (the "Act").
2. An employee-employer relationship existed between plaintiff and defendant-employer on October 23, 1993 and on May 30, 2001.
3. Defendant-employer is self-insured.
4. Plaintiff sustained a compensable injury on October 23, 1993.
5. Plaintiff contends the issues to be heard are as follows: Is plaintiff entitled to further compensation for her injury of October 23, 1993? If so, of what sort and to what extent? Is plaintiff entitled to compensation for her injury of May 30, 2001? If so, of what sort and to what extent? What is plaintiff's compensation rate for injury of May 30, 2001?
6. Defendant contends the issues to be heard are as follows: Is plaintiff entitled to further compensation for her injury of October 23, 1993? If so, to what extent? Is plaintiff entitled to compensation for her alleged injury of May 30, 2001? If so, of what sort and to what extent? Is plaintiff entitled to benefits calculated on an average weekly wage other than that effective on October 23, 1993?
7. The depositions of Dr. Douglas McFarlane and Dr. Menno Pennink are a part of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was approximately forty-six (46) years old and working for defendant-employer for four hours per day due to restrictions for her knees and back. Plaintiff has been employed with defendant-employer for approximately twenty-seven (27) years and specifically employed in the shoe department for the last twenty-four (24) years.
2. On October 23, 1993, plaintiff was employed by defendant-employer in the shoe department when she suffered a work-related injury to her left and right knees and low back after falling. This claim was accepted as compensable by defendant — employer. However, plaintiff now alleges that she sustained a new injury left knee and back on May 30, 2001.
3. Although plaintiff was initially returned to work at full duty after her 1993 injury by accident, she was unable to work a full eight-hour shift and therefore was restricted to six hours of work and then later returned to a full eight hours. However, again, plaintiff could not tolerate working for a full eight-hour shift and was eventually permanently restricted to a four-hour shift of retail work beginning in 1995 or 1996. From that time until May 30, 2001, plaintiff continued to work for defendant-employer in the shoe department for four hours per day within her restrictions.
4. After the injury by accident in 1993, plaintiff was treated for her back and knee injuries by Drs. Getter, McFarlane and Pennink. Dr. McFarlane primarily treated plaintiff's knee conditions and Dr. Pennink primarily treated plaintiff's back condition.
5. After the October 23, 1993 injury by accident but prior to the alleged May 30, 2001 injury by accident, plaintiff suffered from bilateral chondromalacia patella, a condition that affects the cartilage in both of plaintiff's knees. Dr. McFarlane also diagnosed degenerative disc disease and osteoarthritis in both knees prior to May 30, 2001. In fact, prior to May 30, 2001 and as a result of the 1993 injury, plaintiff had a longstanding history of knee complaints, with periodic exacerbations or flare-ups of her knee pain. According to Dr. McFarlane, chondromalacia patella is a condition that would not likely improve on its own and one from which he would expect intermittent flare-ups. Dr. McFarlane recommended arthroscopic surgery to plaintiff for her knee condition as early as 1998 and 1999.
6. Prior to the alleged May 30, 2001 injury by accident, plaintiff last was seen for her knee condition on June 22, 1999, at which time she was treated by Dr. McFarlane. Furthermore, plaintiff last was seen for her back condition on June 29, 1999 by Dr. Pennink. Plaintiff testified that she was relatively free of difficulty with her knees and back prior to the May 30, 2001 incident.
7. On May 30, 2001, plaintiff was working for defendant-employer in the shoe department and was descending a rolling ladder after returning a pair of shoes to stock. When plaintiff was on the second lowest rung, the ladder moved and she twisted her left knee and heard a popping noise while trying not to fall. Plaintiff did not fall and did not testify specifically that her back was impacted by the incident. Plaintiff and a co-employee placed ice on her knee and kept it elevated while sitting in the stock room. Plaintiff did not report the injury but her co-worker telephoned the manager on duty. Later that day, plaintiff went to Primary Care Plus where an MRI was performed on her left knee. Plaintiff was taken out of work for 3 days by Primary Care Plus and then returned to light duty work where she tagged merchandise until approximately June 19, 2001. Plaintiff testified that performing the light duty consisted of more sitting and caused back pain and discomfort.
8. Thereafter, plaintiff returned to Dr. McFarlane on June 19, 2001 and gave a history of the May 30, 2001 incident. Dr. McFarlane examined plaintiff's left knee and found mild effusion. In addition, he reviewed the MRI, which revealed a ganglion cyst. As a result, Dr. McFarlane diagnosed plaintiff with pre-existing chondromalacia patella and osteoarthritis of the left knee and a probable contusion to the peroneal nerve. Dr. McFarlane recommended conservative treatment with mediation and physical therapy. Once again, he indicated that arthroscopic surgery was an option. Due to plaintiff's left knee condition, Dr. McFarlane released plaintiff to work at "sit down duty" only but was told by plaintiff that a doctor's note providing restrictions for her back would keep her out of work.
9. Dr. McFarlane again saw plaintiff on July 24, 2001 and plaintiff continued to complain that her left knee was not improved. Dr. McFarlane examined plaintiff finding tenderness but no effusion and he again reviewed the MRI. Dr. McFarlane took plaintiff out of work as a result of her left knee problems as he was concerned by her continued complaints and about a potential problem with her iliotibial band, which might not be diagnosed by the MRI. Dr. McFarlane recommended additional medications, physical therapy and a return visit.
10. Plaintiff again returned to Dr. McFarlane on September 4, 2001 for evaluation of significant pain and arthroscopic surgery was again proposed as an option. However, plaintiff opted for additional therapy and was once again kept out of work.
11. On October 10, 2001, plaintiff returned to Dr. McFarlane who again recommended surgery and was concerned about a possible meniscus tear. Plaintiff reported a severe flare up of pain and swelling about ten days earlier, which made weight bearing difficult. Furthermore, the physical therapist was concerned about plaintiff's level of participation in therapy and noted that plaintiff was seen line dancing. Dr. McFarlane could not explain the therapist's note but indicated that sometimes patients have good days and go beyond their abilities. Plaintiff admitted to frequenting the club where line dancing takes place and indicated that she might have line danced on occasion to try to keep active but did not remember specifically.
12. On November 20, 2001, plaintiff was seen by Dr. McFarlane for a pre-operative evaluation and thereafter performed arthroscopic surgery on plaintiff's left knee, which confirmed the findings on the MRI. Thereafter, plaintiff was kept out of work until December 11, 2001 when she was released to return to work in "a sit down capacity". Plaintiff returned to work for defendant-employer on December 18, 2001. Thereafter, on December 20, 2001, plaintiff was again evaluated and released to return to work with restrictions, which allowed her to return to her previous employment in the shoe department at 4 hours per day or back to the same baseline prior to the May 30, 2001 aggravation of her pre-existing condition from the 1993 injury by accident. Plaintiff continued her work in the shoe department until mid-August 2002 when she was moved to a different department.
13. While Dr. McFarlane diagnosed pre-existing chondromalacia patella and osteoarthritis and felt that plaintiff would experience flare-ups of knee pain following her 1993 injury by accident, he noted that plaintiff did not seek treatment for a flare-up for almost two years from June 22, 1999 when her condition was fair until the May 30, 2001 incident which resulted in an aggravation of plaintiff's pre-existing condition of her left knee and caused plaintiff's inability to work as well as her eventual knee surgery. Although Dr. McFarlane had recommended surgery as a treatment option in 1998 and 1999, the December 2001 surgery is nevertheless a consequence of a combination of the 1993 and 2001 injuries. Therefore, the greater weight of the evidence of record indicates that plaintiff's May 30, 2001 incident at work aggravated her pre-existing left knee condition and therefore constitutes a new injury.
14. Dr. McFarlane provided a permanent partial disability rating of 10% following plaintiff's 1993 injury by accident for which she has received compensation. However, at the time of the deposition, Dr. McFarlane had not yet rated plaintiff with regard to her December 2001 left knee surgery, which resulted from plaintiff's May 30, 2001 exacerbation of her earlier injury. Furthermore, plaintiff is not at maximum medical improvement with regard to her May 30, 2001 left knee injury for the purposes of a permanent partial disability rating. However, plaintiff returned to work as of December18, 2001 and is capable of essentially performing the same job duties for four hours per day as prior to her December 2001 surgery but subsequent to her 1993 injury by accident with regard to her left knee. Plaintiff retains the same earning capacity as of the time of her May 30, 2001 injury by accident.
15. At the time of the hearing, plaintiff complained of back pain and radiating leg pain, which she related to the May 30, 2001 injury. However, plaintiff indicated that her left knee was the primary problem after the May 30, 2001 injury. In fact, plaintiff did not treat with her original treating physician Dr. Menno Pennink, a neurosurgeon, after the May 2001 incident but rather only prior to that incident and as a result of plaintiff's 1993 injury by accident. Prior to May 2001, plaintiff suffered low back pain with radiation into the lower extremities. According to Dr. Pennink, plaintiff's low back pain and radiation complaints are of the character to ameliorate for periods of time without needing treatment but to subsequently flare-up. These flare-ups could take place in the absence of any specific trauma or event. Dr. Pennink felt that plaintiff would continue to experience pain into both legs as a result of her low back pain, even in the absence of any new trauma. Any testimony of Dr. Pennink that the May 30, 2001 incident caused an exacerbation of plaintiff's back condition is given little weight as it is based on an inaccurate history.
16. Plaintiff did not report the alleged work-related incident of May 30, 2001 until after she was informed by defendant-employer that temporary partial disability benefits from the 1993 incident were about to expire. However, plaintiff testified that she was not concerned about the reporting issue because she did not realize that the May 30, 2001 injury was contested until questions were raised after surgery was recommended in October 2001.
17. The greater weight of the evidence of record demonstrates that plaintiff sustained an injury by accident on May 30, 2001, which resulted in an aggravation of her left knee injury from 1993. However, plaintiff has failed to prove by the greater weight of the evidence that she sustained an aggravation of her back or right knee conditions as a result of the May 30, 2001 injury by accident. Furthermore, while plaintiff was unable to work as a result of the May 30, 2001 injury by accident to her left knee from May 30, 3001 until June 2, 2001 and from July 24, 2001 until December 18, 2001, she has failed to prove that she suffered any diminution in earning capacity after December 18, 2001 as a result of the May 30, 2001 left knee aggravation due to the fact that plaintiff returned to her same earning capacity, albeit diminished from the 1993 injury, as of December 18, 2001. With regard to any inability to earn wages due to plaintiff's back condition, plaintiff has failed to prove such disability is related to the May 30, 2001 injury by accident or that she has undergone a substantial change of condition with regard to her back after the October 23, 1993 injury by accident.
18. Furthermore, while plaintiff may have an additional impairment rating to her left knee as a result of the December 2001 surgery which in part resulted from the May 30, 2001 aggravation, there is insufficient evidence at this time from which to determine that issue.
19. Plaintiff has been compensated for temporary total disability, temporary partial disability and permanent partial disability pursuant to Form 21 and Form 26 Agreements for her October 23, 1993 injury by accident to both her back and knees at an average weekly wage of $429.95. As plaintiff was paid both temporary partial and permanent partial disability, there has been an overpayment for the 1993 injury by accident. In any event, plaintiff has failed to prove a change of condition with regard to her back or right knee conditions, which are not causally related to the May 30, 2001 injury by accident.
20. Plaintiff's average weekly wage at the time of her May 30, 2001 injury by accident is based on her earning capacity for the 52-week period prior to May 30, 2001, at which time she was only capable of earning wages while working 4 hours per day. Temporary partial disability payments are based on plaintiff's diminution of earning capacity and should not be considered as part of her wages for the purposes of determining her average weekly wage at the time of her May 30, 2001 injury. No Form 22 Wage Chart was entered into the evidentiary record documenting plaintiff's earnings for the 52-week period prior to May 30, 2001. However, at the time of her May 30, 2001 injury by accident, plaintiff earned $5.15 per hour plus commission but plaintiff's wages varied due to commissions earned. In addition, plaintiff received temporary partial disability payments to ensure that her wages of $11.86 per hour at the time of her 1993 injury were paid to her. The rate of payment varied weekly due to her commission sales.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to her back and knees arising out of and in the course and scope of her employment on October 23, 1993 for which she is entitled to reasonably necessary medical treatment related to that injury for so long as such treatment tends to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-2; § 97-25; Hyler v. GTE Prods. Co.,333 N.C. 258, 425 S.E.2d 698 (1993).
2. In addition, plaintiff sustained a compensable injury by accident to her left knee only arising out of and in the course and scope of her employment on May 30, 2001. N.C. Gen. Stat. § 97-2.
3. As a result of plaintiff's injury by accident to her left knee on May 30, 2001, plaintiff was unable to earn the same or greater wages in any employment from May 30, 2001 until June 2, 2001 and from July 24, 2001 until December 18, 2001 and is therefore entitled to temporary total disability for those periods. N.C. Gen. Stat. § 97-29.
4. The law governing change in condition is not applicable in this case as to plaintiff's left knee injury as she has proven by the greater weight that she sustained a new injury on May 30, 2001 to her left knee. However, with regard to plaintiff's right knee and back conditions for which she failed to prove any new injury by accident, plaintiff is not entitled to additional indemnity compensation, as she has failed to prove a substantial change of condition pursuant to N.C. Gen. Stat. § 97-47. In addition, due to the fact that defendant-employer paid both temporary partial and permanent partial disability, it appears that there has been an overpayment and no further indemnity benefits are due for the 1993 injury by accident. N.C. Gen. Stat. §§ 97-47; 97-30; 97-31.
5. Plaintiff's average weekly wage for her temporary total disability arising out of the May 30, 2001 injury by accident is based on her actual earnings for the 52-week period prior to May 30, 2001 and is not based on temporary partial disability paid or plaintiff's 1993 wages. N.C. Gen. Stat. § 97-2(5).
6. Plaintiff is entitled to all reasonably necessary medical treatment for her left knee condition, which arises out of both her 1993 and 2001 injuries for so long as such treatment tends to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-25;Hyler v. GTE Prods. Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
7. Plaintiff is entitled to no temporary partial disability as a result of the May 30, 2001 injury by accident, as she was capable of earning the same or greater wages as of December 18, 2001 based on her average weekly wage at the time of her May 30, 2001 injury by accident. N.C. Gen. Stat. § 97-30.
8. There is insufficient evidence of record from which to determine the issue of plaintiff's entitlement to further permanent partial disability benefits for her left knee as a result of the May 30, 2001 injury by accident. However, plaintiff is entitled to no further permanent partial disability benefits for her right knee and back. N.C. Gen. Stat. §97-31.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability from May 30, 2001 until June 2, 2001 and from July 24, 2001 until December 18, 2001 as a result of her May 30, 2001 left knee injury by accident at a weekly compensation rate based on her earnings for the 52 weeks prior to her May 30, 2001 injury by accident, subject to a reasonable attorney's fee.
2. Defendants shall pay all reasonably necessary medical expenses incurred or to be incurred for treatment of plaintiff's back and knee conditions, as a result of both her 1993 and 2001 injuries for so long as such treatment tends to effect a cure, give relief or lessen the period of disability.
3. An attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff is hereby approved to be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel.
4. Each party shall bear its own costs.
This the ___ day of September 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER